ANNA GIBBON, *et al.*, plaintiff in error, *vs.* GEORGE E. GIBBON, defendant in error.

1. When a testator, at the date of his will, had a wife and a son and daughter, and brothers and sisters of both the whole and half blood, and gave in his will several legacies to his daughter for life, and at her death to her children, and if she died childless, then to his (the testator's) "heirs of the full blood," and the daughter died childless before the testator:

*Held*, 1. that the legacies did not lapse by the death of the daughter, but went to the testator's "heirs of full blood."

2. that by the phrase "heirs of the full blood" the testator meant his statutory heirs, including his wife; but if it should so happen that at the death of his daughter childless, his statutory heirs should be his collateral heirs, then he intended only those of the whole blood to take, to the exclusion of those of the half blood.

2. Section 2425 of the Code, providing that "All property acquired subsequent to the making of the will shall pass under it, if its provisions be sufficiently broad to embrace such property," is prospective only, and after acquired real estate does not pass under wills made before the Code went into operation, even though the testator did not die til afterwards.

3. When there is a legacy of the income of $50,000 Charleston City stocks to a widow for life, in lieu and in bar of dower, the widow is put to her election as to the legacy or dower in all the real estate of which the testator dies seized, whether said real estate passes under the will or not. If she elect to take the legacy, she has no further interest in the real estate, either by way of dower or by way of a child's part in lieu of dower, and this whether the realty passes by the will or not.

4. A bequest of the income of $50,000 of Charleston City stock, at its par value, is a bequest of the income of stock of the nominal value of $50,000, and not of the income of $50,000 worth of such stock at its market value.

5. This Court will not overrule the judgment of the Judge of the Superior Court, in dissolving an injunction, unless there is an abuse of the discretion which the law confers upon such Judge. WARNER J., dissents as to the first head note.

Construction of Will.     Before Judge POPE.     Fulton Superior Court.     April term, 1869.

George Gibbon, of Charleston, South Carolina, made his will and codicils thereto, in said State, in the words and the dates following: "I direct that my funeral expenses and all other legal debts be paid immediately upon my burial. I bequeath unto Messrs. John Gibbon, George E. Gibbon and William L. Webb, to them and to their executors, my negro slave, Mary, with her future issue, and fifty thousand dollars, at its par value, of my city of Charleston six per cent. stock, of the longest dates, in trust, nevertheless, to allow my dear wife, Anna Gibbon, the use and services of Mary and her issue, and to pay to my dear wife the interest of the city stock quarterly, as it shall become due, for and during her natural life, her receipt alone to be taken for the payments thereof; the use and services of said negro or negroes, and the interest arising from the city stock shall not be subject to the control or contracts of any husband with whom she may intermarry, and shall be by her received in lieu and bar of her dower in my real estate; and, upon my wife's death, the said trustees shall sell the negro or negroes and one-half of the proceeds of the sale and one moiety of said city stock shall be paid and transferred to my son, George E. Gibbon, to him absolutely, and the remaining portion of the proceeds of said sale, with the other moiety of the said city stock shall be retained and held by the said John Gibbon, George E. Gibbon and William L. Webb, as trustees of my daughter, Ellen L. Brown, the wife of Andrew McBrown, on the same trusts and subject to the same limitations as they hold the real estate and personalty I have hereinafter devised and bequeathed to

them, in trust for my daughter, the said Ellen L. Brown, the wife of Andrew McBrown.

I bequeath unto John Gibbon, George E. Gibbon and William L. Webb, to them and their executors, ten thousand dollars of my city of Charleston six per cent. stock in trust, nevertheless to pay my sister, Mrs. Elizabeth Little, of Boston, Massachusetts, for her sole use, the interest accruing thereon, being six hundred dollars annually, in quarterly payments, as it shall become due, her receipt alone to be taken for the payments as they shall be made quarterly, and upon my sister Elizabeth Little's death, one moiety of this city stock shall be transferred to my son, George E. Gibbon, to him absolutely freed from all trusts whatever, and the other moiety of this said city stock shall be retained and held by them, the said John Gibbon, George E. Gibbon and William L. Webb, as trustees of my daughter, Ellen L. Brown, the wife of Andrew McBrown, on the same trusts and subject to the same limitation as they hold the real estate and personal property I have hereinafter devised and bequeathed to them in trust for my daughter, Ellen L. Brown, the wife of Andrew McBrown.

I bequeath unto my sister, Abba C. Waite, of Malden, Massachusetts, one thousand dollars.

I bequeath unto my brother, William Gibbon, of Marborough, Massachusetts, $1,000 00, to be equally divided among his children living at my death.

I devise unto my son, George E. Gibbon, to him and his heirs, my lot of land, with the buildings thereon, in which I now reside, known as number nine, on the north-west side of New street, in the city of Charleston, and in the said State.

I devise my lots, with the buildings thereon, known as number seventeen, on the north-west side of New street, in the city and State aforesaid, now occupied by my son-in-law, Andrew McBrown, and his family, to John Gibbon, George E. Gibbon and William L. Webb, to them and their heirs, in trust, nevertheless for the sole use and benefit of my daughter Ellen L. Brown, the wife of Andrew McBrown, to collect and pay over the rents to her, taking her receipt alone for the same,

and not to be subject to the control, nor liable for the debts of her present nor any future husband with whom she may intermarry, for and during her natural life, and upon Ellen L. Brown's, my daughter's death, then in trust to pay the said rents to her child, or children, and to the issue of any deceased child or children, children, the issue of a deceased child or children representing his or their parent, then living, at her death, until the youngest child living shall attain the age of twenty-one years of age, when this real estate shall pass to, and shall be equally divided among the said children and the issue of deceased children, representing their deceased parent, or parents, to them severally and to their heirs, freed from all trusts and limitations; but should my daughter, Ellen L. Brown, die childless, then this real estate shall pass to my heirs of full blood.  I devise the rest and remainder of my real estate to John Gibbon, George E. Gibbon, William L. Webb and Andrew McBrown, to them and their heirs, in trust, to collect and receive the rents and profits arising from this said real estate, and the nett increase I direct that they divide into two equal moieties, and one moiety of the said increase shall be paid to my son George E. Gibbon, for and during his natural life, and upon his death then in trust to pay the said increase to his children, and the issue of any deceased child, the issue of deceased children representing their deceased parent, then alive at his death, until the youngest child then living shall attain the age of twenty-one years, when the one-half part of this said real estate shall pass to and be equally and severally divided among them and their heirs; but should my son, the said George E. Gibbon, die childless, this half part of my said real estate shall pass to the heirs of the full blood; and the other moiety of the increase shall be paid to my daughter, Ellen L. Brown, wife of Andrew McBrown, for her sole use, during her natural life, not to be liable to the control of her present or any future husband with whom she may intermarry, her receipt alone to be taken for the payments thereof, and upon her death, then in trust to pay the said increase to her children, and to the issue of any deceased child or children, the issue of deceased

children representing their parent then living, at her death, until the youngest child living shall attain the age of twenty-one years, when this real estate shall pass to and be shared equally among the said children and the issue of deceased children, representing their deceased parent, to them severally and their heirs, freed from all trusts whatsoever. But should my daughter, Ellen L. Brown, the wife of Andrew McBrown, die childless, then this said real estate shall pass freed from all trusts to my heirs of the full blood.

The residue of my personal property of every kind and description whatever, of which I die possessed, or to which I may be, at law or in equity, entitled, I direct to be divided into two equal portions: one portion I bequeath to my son, George E. Gibbon, to him absolutely, and the other portion I bequeath to John Gibbon, George E. Gibbon and William L. Webb, to them and their executors, in trust, to invest the same, one-half in South Carolina six per cent. stock and the other half in city of Charleston six per cent. stock, and the income arising from this investment, as it becomes due, they shall pay over to my daughter, Ellen L. Brown, the wife of Andrew McBrown, taking her receipts alone for the payments thereof, during her natural life, not to be liable to the control or contracts of her present or any future husband, with whom she may intermarry, and upon her death, then in trust to pay over the said income to her child or children, issue of a deceased child or children representing their deceased parent or parents, who shall be alive at her death, until the youngest living shall attain the age of twenty-one years, when the whole of said State and city stock, freed from all trust, shall be paid over to them in severalty, share and share alike, the distribution being made *per stirpes*. But should my daughter, Ellen L. Brown, wife of Andrew McBrown, die childless, then this State and city stock shall pass to my heirs of the full blood."

He nominated John Gibbon, George E. Gibbon, William L. Webb and Andrew McBrown his executors, with the proviso, that if McBrown died before Ellen L. Brown, she should

be executrix in his stead, and signed the will, with the usual formalities, on the 7th of April, 1859.

On the 25th of November, 1859, he made a codicil, to be taken as part of said will, which was to stand, except as thereby modified. In it he states that the birth of his daughter, Mary Elizabeth Gibbon, and a wish to provide for her, is the sole motive for these modifications. By said codicil he then bequeathed to said John Gibbon, George E. Gibbon and William L. Webb, $50,000 00 of his State of South Carolina six per cent. stock, "to be taken at its par value, to them, their executors and administrators, in trust, nevertheless for the sole use and benefit of his (my) daughter, Mary E. Gibbon, for and during her natural life, free from the control and contracts of any husband with whom she may marry, and upon her death, the said trust estate shall pass to her children, to be equally divided among them, the issue of a deceased child or children .taking the portion or shares to which the deceased parent, if alive, would have been entitled, freed from all trusts whatever. But should Mary Elizabeth Gibbon die leaving no child, or the issue of a deceased child, living at her death, then this trust estate shall pass to his (my) heirs forever. On the death of his (my) wife, Anna Gibbon, his (my) daughter, Mary Elizabeth Gibbon shall be entitled equally with the rest of his (my) children to one-third part of the trust estate, by said will bequeathed to trustees for the use of said wife," to be held by said John, George E. and William L., upon the same trusts as the $50,-000 00 bequeathed herein to said Mary Elizabeth.

On the 15th of February, 1861, after the birth of his son, John Edward Gibbon, he made another codicil whereby he gave to said last name trustees $35,000 00 "of stock of the State of South Carolina, or the city of Charleston, at its par value," in trust, for the sole use of said son, John Edward, provided that if he died, leaving no child at his death, this trust estate should be divided equally between testator's wife and children, living at John Edward's death, share and share alike.

A last codicil gave to Benjamin F. Riddell $10,000 00 of

South Carolina State stock, at par, provided Riddell would travel with testator, for his health, when and as long as he wished, and return with him to Charleston, and go again, if testator wished to travel for his health.

At the time of executing said will and codicils, testator had no property except in Charleston, South Carolina. George E. Gibbon, a son by a former marriage, his wife, Mrs. Ellen L. Brown, William Gibbon and Mrs. Little, his brother and sister of the whole blood, and John Gibbon and Mrs. Waite, his brother and sister of the half blood, were living. Testator removed to Georgia, after the date of the last codicil, and acquired real property here. If Mrs. Brown ever had a child it perished at the birth, or died soon after; and she died in 1863, her husband surviving her. On the 29th of May, 1868, testator died, leaving as his heirs-at-law said minors, Mary E. and John E., his wife, and said George E. According to the appraisement, his property consisted of $28,600 00 in real estate in Georgia, $31,500 00 of real estate in South Carolina, stocks and bonds of the United States, Georgia, South Carolina, Charleston, etc., of the current cash value of $190,000 00. His estate had suffered greatly by the war. The stocks of Charleston and South Carolina, at par when he made his will, greatly depreciated, the $82,000 00 of the former were appraised at sixty cents in the dollar, and the $78,-304 00 of the latter were appraised at fifty cents in the dollar. And the great fire in Charleston and the war, had greatly reduced the value of the real estate in Carolina.

In July, 1868, the will was admitted to probate in Fulton county, Georgia, and George E. Gibbon, alone qualified and took possession of the estate as executor. He filed a bill against said minor children for a partition of the property. (William H. Fisher was appointed their guardian *ad litem.*) In this bill he claimed that under said will he was entitled to half of said realty in Georgia, and that the other half was subject to division between himself and said minors, to the exclusion of the widow. She demurred to this bill because she was not made a party to it, and because, as she contended, she and said minors were en-

titled to an equal distribution of the realty in Georgia, because it was acquired after the will was made and did not pass under it, the said realty having been acquired from the 8th of April, 1862, to the 23d of November, 1863.

This demurrer was met by an amendment to the bill alleging that, by the will, Mrs. Gibbon was put to an election as between her legacy and dower in the real estate, and that she had elected, on the 4th of September, 1868, to take her legacy in lieu of dower, and that said after-acquired real estate in Georgia did pass under said will. After this amendment was filed, the whole was demurred to *de novo* on the same and other grounds. Pending the argument on this demurrer, complainant's counsel yielded the point so far as to make Mrs. Gibbon a party defendant. The bill was then answered by William H. Fisher, in behalf of the children, setting up their right in the real estate to be equal to that of complainant, and by Mrs. Gibbon, in her own behalf, to the same purport, making her answer in the nature of a cross-bill, and alleging, among other things, 1st, that the Georgia real estate did not pass by the will, and that she was entitled to an equal share of that ; 2d, that the legacy to Mrs. Ellen L. Brown was a lapsed one, or it went to all the heirs or distributees of the testator, either by descent or purchase, and it mattered not which, as the effect was the same ; 3d, that, as to these devises and legacies, she was not put to her election by the will and the law, and was entitled to her legacy and an equal share in the property and fund they embraced, according to the Statutes of Georgia and South Carolina respectively ; 4th, that the pretended election set up against her was a nullity, and that she could not make her election until the state of the funds were ascertained, and *that* could not be done until there was a final construction of the will ; 5th, as the direction of the Court was requisite, and the executor would not apply for it, she prayed for such direction.

This being the state of the pleadings, and the question being one entirely of law, with no dispute as to the facts, and each party desiring to hasten an adjudication, they

agreed, by an order taken in term, that the presiding Judge should hear and decide the questions made at Chambers. Subsequent to the time when the case was thus set down for a hearing, to-wit, on the 3d day of November, 1868, the said executor, after having sojourned in Atlanta for the summer, was on the point (as Mrs. Gibbon supposed,) of removing himself and family back to their family mansion in Charleston, where they had always resided, where he was a partner in a business house, where the other executors resided, and where some of the property of the estate was situated ; and, seeing that he had *the power* to remove the assets to Sóuth Carolina, Mrs. Gibbon filed her bill to enjoin the removing of said assets, and for the appointment of a Receiver, which was duly sanctioned by the Court according to her prayer.    To this bill George Gibbon filed his answer, sustained by affidavits, and upon them made the usual motion to dissolve said injunction and revoke said Receivership, which motion was heard before His Honor simultaneously with the hearing set down as aforesaid. After said hearing it was the judgment of the Court: 1st, that the legacy to Mrs. Brown was not a lapsed one, but was a bequest to his children, and that the widow was not entitled, in any manner, to participate in the fund which represented it.    2d, that the after-acquired real estate in Georgia passed by the will, and by the laws of this State, was a good legal devise under said laws.    3d, that the widow was put to her election as to *both* the aforesaid property or funds, and could take no interest therein if she took the legacy.    4th, that the pretended election should be treated as *no* election, and that the widow *might* elect, after there was a final adjudication on all the points made.    5th, that the injunction should be dissolved and the Receivership revoked. - To the 1st, 2d, 3d and 5th points Mrs. Gibbon excepted, and Fisher, as the guardian *ad litem*, excepted likewise to so much of said judgment as is contained in the 2d point.

Gibbon *et al.*, *vs.* Gibbon.

LOCHRANE & CLARK, WILLIAM DOUGHERTY, for plaintiffs in error, said that, at common law the full-blood takes in preference to the half-blood: 8 Petersdorf, 48; Shar's Blackstone, 201, 208 to 240 ; for the law of South Carolina, see 5th stat. S. C., 162–3 ; 3 Gr. Cruise on Real Prop., 172 ; for that of Georgia, see Irwin's Code, sec. 2421 ; wholeblood and full-blood synonymous : 1 Bouvier L. Dic., 527 ; In Georgia heirs-at-law means those among whom the law distributes the estate : 2 Wallace, Jr. R., 368.   Till 31st December, 1833, in England, where the devisee was also heir, he took as heir and not as devisee: 1 Jarman on W., 111 ,112 ; 1 Saldk. R., 241 ; 5 M. & S. R., 14 ; 1 Bar & Adol., 520 ; 2 M. & K., 93.   Statute 3 and 4, William 4th ch. 106 ; Every fair intendment must be made in favor of the heir: Bender *vs.* Dedhrick, 7 W. & S ; Raymond's R., 453 ; Vaughan, 262 ; Cowper, 329, 657 ; 2 Vesey, 272, 581 ; 3d Vesey, 332, 492 ; 1st Vesey & B., 466 ; Mrs. Brown's legacy lapsed: 1st Jarman on W., 667–8–9; Irwin's Code, sec. 2433 ; 2 Shar's Blackstone, 170 ; Irwin's Code, 2238, 2239 ; 1st Coke's R., 66 ; Irwin's Code, secs. 2224, 2225, 2243 ; 1 Jarm. on W., 310 ; citing Plowden, 345 ; Cro. Eliz., 422 ; 2 Jarm. on W., 204 ; Redfield on W., 392; 2 Jarm., 9 ; 2 Leonard, 70 ; 1 Comyn's R., 81 ; Cowper, 235 ; Clark *vs.* Day, Cook's Eliz., 313 ; White *vs.* Collins, 1 Comyn's, 291 ; 2 Sanders, 388; 1 Comyn's, 353, 372 ; 4 Russel, 384.   The after-acquired real estate does not pass under this will.   It was so at common law there till 1st of January, 1863 ; the *lex rei situs* governs : 32 Henry, 8th, ch. 1 ; Cowper, 89 ; 35th Ga. R., 153 ; 18th Ga. R., 3, citing L. Mod. R., 210 ; 7th Mod., 239 ; Ambler, 451 ; 11th Mod. R., 122 ; 34th Ga. R., 387 ; Irwin's Code, secs. 2, 7 ; 16th Howard's R., 275 ; 9th Iredell, 288 ; 5 W. & S., 199 ; 1st Strange, 491 ; as to election : 1 Jarman on W., 390, 387 ; 2 McCords, ch. 306 ; City of Phila. *vs.* Davis ; 1st Whart, 3 Depran, 388 ; 3 Vesey, 492, 332 ; 2d Vesey, 272, 581 ; 11th Viner, 185; 2 Equity Cas., 439 ; devise to heirs upon failure of prime object of bounty, covers heirs at

the time of the failure : 2 M. & K., 230 ; 2d M. & K., 90; 8th Vesey, 37 ; 8th Gray, 86 ; 3d Allen, 587.

COLLIER & HOYT, for defendant, replied, that the testamentary scheme should be carried out : Doug. 322 : 1 Black, 672 ; testator intended to provide against a lapse of Mrs. Brown's devise and it did not lapse ; 3 Atkyns, 572 ; 2 Cox, 121 ; 2 Vernon, 207, 611 ; 2 Peere Williams, 113 ; 1st Peere Williams, 274 ; Roper on Leg., 487, 8–9 ; 2 Williams on Ex., 1039–40 ; 17th Ala., (U. S.) 214 ; or if lapsed as to Mrs. Brown, it went into the *residuum* : 2 Williams on Ex., 1250, 1258 ; 8 Vesey, 25 ; 1 Sim. & Stu., 294 ; 1st Richard, Eq., 462 ; 7th Metcalf, 141 ; 31st Ga. R., 483 ; 32d Ga. R., 623 ; In this will full-blood meant children of testator : 1 Williams on, Ex., 116 ; 1 Roper on L., 115 to 119 ; 15th Vesey, 191 ; The after-acquired property passed under the will : Irwin's Code, sec. 2425 ; 25th Ga. R., 657 ; 4th Hill's (N. Y.) R., 138 ; 8 Paiges, R., 503 ; 12 Metcalf, 169, 262 ; 3 Cush. R., 366 ; 8 Cranch, 66 ; 4th Maryland, R., 335 ; 23 Mass. R., 251 ; 2 Sumner, C. C. R., 266 ; 18th Ga. R., 1 ; The widow must elect : Irwin's Code, secs. 2429, 3104–5–6–7 ; 24th Ga. R., 185 ; as to discretion of Chancellor, see 1st Ga. R., 9 ; 3d, 94, 435 ; 6th, 220 ; 15th, 554 ; 25th, 148.

McCAY, J.

1. We do not think the legacies to Mrs. Brown lapsed. The will distinctly provides that at her death, without children, the property left her shall go to the testator's heirs of the whole blood.   This is not the same as if it were left to his heirs simply, it points out a particular class of heirs, or rather, as we shall hereafter show, it excludes a particular class of heirs, and therefore the persons taking are purchasers and do not take as heirs.

But it is said that, as Mrs. Brown died before the testator, and as no man can have heirs until he is himself dead, the legacy to Mrs. Brown failing as to her, and also fails as to the remainder, because at her death there was no persons in ex-

istence answering to the description of heirs of the whole blood of the testator, and that consequently the bequest is a lapsed legacy.   The common law rule that a remainder must have a particular estate to support it, has never been applied so as to cause a legacy to lapse.   Mr. Redfield, in his book upon wills says: (2 Redfield, 501.)   "When the bequest depends upon an intervening estate under the will, and is thus made to take effect only at the termination of the prior estate, and the prior estate lapses by the death of the legatee, before the testator, this will not defeat the bequest over," and he refers to numerous authorities in support of the position.   A will takes effect at the testator's death.   Nothing is more common than a devise to certain of the testator's heirs, as the heirs of his body, his heirs male, his minor heirs, his heirs of the whole blood, etc.   These are all good devises, because though a man has no heirs so long as he lives, yet at the moment the will takes effect he has heirs.

In this case, as the first taker died before the testator, the life-estate could not, it is true, take effect; but as we have seen, this is not necessary to prevent a lapse: Redfield, 2d volume, 501.   When this will took effect, to-wit: at the death of the maker of it, his heirs of the whole blood, (whatever he meant by the phrase) were in existence, and under the rule we have mentioned, they take, as though the life-estate was not given at all.   He did not intend that his heirs of the full blood should take through Mrs. Brown.   He only introduces them in case she and her children fail, and we see no reason, as they *have* failed, why this bequest is not as good as though it had been directly to testator's heirs of the full blood.

2.  A leading point in this case, is the meaning which is to be given to the words "heirs of the full blood," used by the testator, in several of the clauses in this will.   Does it exclude the wife?   Although at the testator's death he had two children by his last wife, yet when the will was made he had none, nor does he by any words used in the original will seem to have contemplated children by her.   So far, therefore, as his immediate family is concerned, these words, taken

alone, *have no meaning.* He had two children and his wife, and had he them only in his mind the language he uses would be inexplicable. His two children were of the same mother, and of the same blood, and the words: "heirs of the full blood," are simply nonsense, as applied to the immediate family, as it then stood, and as it is referred to in the will. But it appears the testator had whole and half brothers and sisters then living, and this fact, as it seems to us, makes his meaning clear. The property which he is referring to is a remainder. He is contemplating the death of his wife, and of both his children; to each of them he gives a life-estate, and at the death of either of his children, without issue, he desires to dispose of the remainder. He thinks of his brothers and sisters and their families, and he remembers that by the laws of South Carolina, (where the will was made,) the whole and the half blood, in such a case, share equally. This is against his wishes, and he specially restricts the inheritance to the *whole* or full blood.

Literally, these words exclude even his son and daughter, as well as wife. The son and daughter are of his blood, but not of his full or whole blood; as to each other they are of the whole or full blood, in them is equally mingled the blood of their father and their mother, they, as to each other, are of the same blood, they are of the *blood* of the father and the mother, but they are of the *full blood* of neither. As a description of one's descendants, these words are simply nonsense. A man can have no *descendants* of the full blood of himself, since even his children have of necessity only half of his blood. Mr. Lovelass, in his Treatise on Wills, 174, says: "A kinsman of the whole blood is he that is derived not only from the same ancestor, but the same *couple* of ancestors. Thus the blood of J. S. being composed of that of his father, G. S., and that of his mother, L. B. therefore, his brother, F., being descended from the same parents, has *entirely the same blood* with J. S., or is his brother of the *whole blood.* But if G. S. die, and J. B. marry another and have issue, though having the blood of J. B., having also the blood of the second husband is only of the half blood of J. S."

*The words*, therefore, of this will, taken literally, exclude. the children as well as the widow, since they are none of them of the full blood of the testator. But clearly, taking the will altogether, it is not to be believed that he intended to give this property to his collateral kindred whilst any of his immediate family are living. His mind was, doubtless, so bent upon excluding his kindred of the half blood, that, as is very common with testators, he used language inconsistent with the plain intent of his will, in other parts of it. Courts, in such cases, will not stick in the bark, they will give a fair interpretation to a will, taking it altogether, and will not, by giving to an awkward expression its strict, literal meaning, thwart the *real* meaning of the testator, and will not hesitate to alter, or drop, or insert a word to carry this rule into effect: Revised Code, section 2420.

After much reflection, we cannot but think that this testator meant to give this remainder to his heirs, but if collateral heirs, then only to those of the full blood.

By the laws of Georgia the wife is expressly made the heir of the husband. If there be no children, she is the "sole heir," and if there be children, she is one of the heirs. A man's heirs are those who, by law, take his property on his death without a will.

Our rules of inheritance are different from those of England, and each of the States of the Union has its own rules upon this subject. The word must necessarily describe different classes of persons, accordingly as it is used under one law or another. By the old English law, the word heir only covered descendants, it never went upwards, a man's father or mother could not be his heir. By our law, the wife is expressly made "*an heir*" of her husband. Code, section 2448. We are clear, therefore, that by these words: "heirs of the full blood," he did not mean his children alone, but his heirs generally, his legal statutory heirs with the qualification that if it should happen that his collateral heirs take, then only those of the whole blood shall come in.

2. By the common law, land was not devisable by will. The Courts, however, held the use of it devisable. But

when the statute of uses vested the legal title in the usee, the right to devise lands fell with that statute. The statute of wills allowed one to devise lands of which he was *seized and possessed.* Under the words of this statute, as well as because a will of lands is treated as a conveyance, it was the well settled rule in England, and in this State, until the adoption of the Code, that after-acquired lands did not pass by a will : *Jones vs. Shumake 35th Georgia Reports,* 153. The 2425th section of our Code, which went into operation on first of January, 1863, is in these words : "All *property* acquired subsequent to the making of a will shall pass under it, if its provisions be sufficiently broad." This will was made in 1859, the latest codicil to it, in 1861, but the testator did not die until May, 1868. All the Georgia lands owned by him at his death were acquired after he made his will.

It is contended that the will not having gone into effect until the testator's death, being ambulatory until then, was a good will to pass these lands. We think not. We do not say that the words of this will are not large enough to pass after-acquired lands, had the will been made after the Code went into operation. On the contrary, we are of opinion that such a will made now would pass such lands. We do not think, however, that the statute, passed after a will is made, so operates as to make the will dispose of property that it did not dispose at the time it was made. The Act is not in its terms retrospective, and it is a general rule of law, as well as a fundamental provision of the Code, that an Act is not to have a restrospective operation, unless the words of the Act so require.

It would be doing great injustice to the intentions of a testator to change the *legal effect* of his will by a law made after those intentions had been expressed. As the heirs-at-law have no vested rights until the ancestor is dead, we do not assert that such a law would have been invalid under the Constitution of this State, as it stood at that time, prohibiting retroactive legislation, injuriously affecting private rights, though a good deal might be said in favor of that view. For though the heirs had no rights, the testator had a right to

Gibbon et al., vs. Gibbon.

suppose, when he acquired lands subsequently to the making of his will, that they went to his heirs-at-law, and an Act giving an effect to words in his will so as to make them pass property which they did not pass, comes very near being an Act "injuriously affecting private rights."

But whether this be true or not, the rule remains that statutes are not to have a retroactive operation, unless they so upon their face require : Dwarris on Statutes, 681. And this applies as well to statutes relating to wills as to any other statutes.   A will is almost entirely a question of intention, and it is in fact making a will for a man, to give to his words a meaning they did not have at the time they were written.   The words of this will are general, they do not specifically bequeath all the lands the testator might have at his death, they are broad enough to include such lands, but it is hardly fair to the testator's intentions, to say these general words, when the will was written, would not pass after-acquired lands, but as the law *now* is, such words *would* pass such lands, and therefore we will give to the words such effect as they would have, if used now.   We are not sure that if the will clearly showed it was the *intention* of the testator to pass after-acquired lands, the subsequent Act making such intention legal, might not give validity to the bequest, but this is a different case.   Lands would pass under such words now, because though the intention is not specifically declared, yet the words are broad enough, and this is all the Code requires.   The law, too, leans against intestacy, and will include in such general phrases everything consistent with *the intention*.

We think, therefore, that from the reason of the thing, a will made before the Code, will not pass after-acquired lands, especially if there be no words in the will specifically declaring that intention.   And this is consistent with the authorities, though it is true they are not uniform : *Sutton vs. Chewalt, 18th Georgia Reports,* 3; 2 Mod., 210; 7 Mod., 239; 3 Vent., 653; Ambler, 451; 16 Howard, 275; 8th Cranch, 60; 9 Iredell, 288; 5 Watts and Seargent, 199; 3 Atks., 551; 2 Atkins, 36; 1 Ves., Sr., 225.

Without doubt, there are American decisions on statutes very like ours, in which a different view is taken of the law. The cases in Massachusetts are very strong : 12th Met. 169, 262; 2 Sumner, 263; 3 Cushing, 366. The other cases referred to in the argument, (4 Maryland, 335; 23 Miss., 251,) do not, as it seems to me, sustain the Massachusetts cases. The case in 25th Georgia Reports, 657, of *Worrell vs. Wright,* was also referred to and relied on, but it will be noticed that that was a case of personal property, and besides that, the statute on which that case turned, was not a statute granting new powers to testators, but providing for a construction of certain words, which long experience had shown testators had been very apt to use in a meaning contrary to the legal meaning, by means of which their intentions had been defeated, and the whole scope and design of the Act was to give to these words a meaning which would conform to the well-known use made of them by unskilled men.

Testators, anxious as they often are to create remainders, were in the habit of doing so by phrases which, though such was not their intention in fact, made perpetuities, and the Courts were compelled to hold the remainders void, and thus defeat the intention. The Act construed in *25th Georgia Reports,* 657, was passed to uphold the intention of the testators to give to certain technical phrases *that legal meaning* which experience showed they in fact gave them, but which the Courts felt themselves bound not to give them. It was well enough to give *that* Act a retrospective operation since its object was to compel the Courts to give to certain words in wills that meaning which it was plain the testators gave them. But to give this Act a retrospective operation, is to make the testator do what he did not intend to do, to make his will pass property by words which when he used them would not pass it. We do not think such a construction ought to be given to the Act, and we hold that the after-acquired lands did not pass by this will. They are to be disposed of under the statute of distributions, of this State. They go to the heirs-at-law, the wife and children, according to the statute.

Gibbon *et al.*, *vs.* Gibbon.

3. We do not think that under our statute the widow can take her legacy and also dower in these lands. The legacy in the will is expressly given in lieu of dower. And by our Act, Code, section 1754, her dower is barred by any legacy given and accepted by her in lieu of dower. She stands, however, as to these lands, as a child and has a child's part in them; they are to be distributed as though there were no will, except that, if she take the legacy, she cannot take dower even in these lands.

4. We do not see much ground for dispute, as to the meaning of the clause bequeathing $50,000 00 Charleston city stock, at its par value. It is rather far fetched to suppose that he meant to give $50,000 00 worth of Charleston city stock. Had he intended this, he could, and we think would have expressed himself far more distinctly than he has. Indeed, the fairest meaning to be given to the words which he *does* use, is, as we think, directly contrary to this. He says $50,000 00 of Charleston city stock, at its par value. The legatee is to take it at par. How can this be if it is to be taken at a discount, or at a premium?

5. As to the question made on the dissolution of the injunction, we have so often laid down the rule that we will not further discuss it. There has been no *abuse* of the discretion of the Judge. Indeed, we are not sure we would not have done just as he has. Injunctions are harsh proceedings, and it ought to be a case of merit to authorize the use of them. The Judge still has the whole matter under his control. If new developments come out, he can, if he see fit, renew the injunction. As it is, we will not disturb his judgment on this point.

BROWN, C. J., concurred, but wrote no opinion.

WARNER, J., dissenting:

I dissent from that portion of the judgment of the Court in this case, which allows the widow of the testator to take an equal share with the testator's three children under his will, in the property devised and bequeathed to his daugh-

ter, Mrs. Brown, as being one of "*his heirs of the full-blood*" specified therein. The testator having in his will given to his wife $50,000 00 during her natural life, in lieu of dower, it was not his *intention* to include her as one of *his heirs of the full-blood*, who should take his property, in the event his daughter, Mrs. Brown, should die childless, but it was his *intention* that *his* children, *his* heirs, who had *his* blood in them, should take it. The two thousand four hundred and forty-eighth section of the Code determines who are *the heirs-at-law* of a deceased person. If the intestate dies without children, or the descendants of children, leaving a wife, the wife is *his sole heir*. It is only in the event that the intestate dies without children, or the descendants of children, that his wife is declared to be *his heir;* but even then she would not be *his heir of the full-blood*, as specified in the testator's will. If there are children, or descendants of children, the wife is not declared *eo nomine*, to be an *heir* of the intestate. It is true, provision is made for her, she takes a child's part of the estate, unless the shares exceed five in number, in which case, she takes one-*fifth of it*. Thus it will be seen, when there are children or the representatives of deceased children, the wife does *not inherit equally as an heir* of the intestate. But children stand in the *first degree* from the intestate, and inherit *equally* all property of every description. The half-blood on the *paternal* side inherit equally with the whole-blood. The majority of the Court hold, that the testator meant by the phrase, heirs of the full-blood, his *statutory* heirs, including his wife. In my judgment, such was not the *intention* of the testator, nor is such a construction the legal effect of the words, "my heirs of the full-blood," contained in the testator's will. The testator must be presumed to have known when he made his will, what everybody knows, that his wife was *not his heir of the full-blood*, even if it were to be conceded that she was his *statutory* heir when he had children who had *his blood* in them, and who stood in the first degree to him as his heirs. The property bequeathed and devised to Mrs. Brown, she hav-

ing died childless, should, in my judgment, be equally divided between the testator's three children, to the exclusion of the widow, she not being an *heir of his blood*, either statutory or otherwise.