## GARRETT *et al. vs.* WHEELESS.

1. A testamentary paper in the following terms was offered for probate : " I, Riley Garrett, of the county of Randolph and state of Georgia, being of perfect mind and memory, thanks be given unto God, calling unto mind the mortality of body and knowing that is appointed unto all men once to die, I do make and ordain this my last will testament, that is to say, principally, and first of all, I give and recommend to the earth to be buried in decent christian manner, at the discretion of executors, who shall be Isham Wheeless,

and so much of my worldly estate I give and bequeath unto William Augustus Wheelus, and I do hereby revoke and disannual all other wills, legacies and bequests, confirming this to be my last will and testament : "

*Held*, that such a will was not so uncertain as to be void. A will should not be refused to be admitted to probate on account of uncertainty, unless it be so uncertain that it cannot be construed by the aid of parol testimony.

2. It appears that the testator in this will was a bastard ; that the executor was his first cousin, and the legatee named was the executor's child, six years of age ; that he kept his will and a photograph of the boy in his trunk together ; and that a year before his death he stated that this legatee was the only relation he recognized (the father of the legatee having died) though there were others nearer of kin, in fact :

*Held*, that in the light of these facts, the intention of the testator was to provide for his burial expenses, and leave the remainder of his property to the legatee named.

September 12, 1882.

Wills. Legacies. Before Judge WELLBORN. Hall Superior Court. February Term, 1882.

The facts of this case are sufficiently stated in the decision, except the following :

Riley Garrett, the testator, was an illegitimate son of one Mary Garrett, and the caveators were his first cousins on his mother's side. The testimony shows that he always recognized Isham Wheeless, the father of the legatee in the will, as his cousin, and that they were intimate with each other.

G. H. PRIOR ; J. B. ESTES & SON ; GEO. K. LOOPER ; W. L. MARLER ; H. H. PERRY ; L. E. BLECKLEY, for plaintiffs in error, cited : Jarman on Wills, vol. 1, [24] ; 24 *Ga.*, 643, 658 ; 28 *Id.*, 98, 330 ; *Watford vs. Foster*, February Term, 1881 ; Williams on Executors, vol. 1, 458 [393] ; 35 Conn., 525 ; Wms. on Exrs., vol. 1, 454 (note r.) ; 3 Sw. & Tr., 6 ; 47 N. H., 27, 46 ; 10 Richardson So. Ca., 193 ; 59 *Ga.*, 473 ; Code, 2394 ; 2 Kelly, 50 ; Bacon's

Abr., X, 479 ; 2 Kelly, 32 ; 26 *Ga.*, 552 ; 32 *Id.*, 601 ; 25 *Id.*, 430 ; Reese's Manual, 274 ; 25 Pa., 460 ; Jarman on Wills, vol. 1., pp. 643, 646 ; margin, 356–368 ; pp. 649, [359], 662, 663, [370] ; 2 Roper on Legacies, 1450, 1452 ; 44 Md., 30 ; Jarman, vol. 1, 739, [425] ; Wms. on Ex'rs, vol. 2, 1244, note ; Starkie on Ev., 1272 ; Wigram on Wills, 186 ; Code, 2456 ; 44 Md., 30 ; 16 *Ga.*, 507 ; Jar-man, vol. 2, p. 60 [486], 61, note, 74, 56 [483] ; 1 Sneed, 394 ; 12 Grattan, 196 ; 3 Metc. Ky., 156 ; Roper on Leg-acies, [1469–70–71–72] ; O'Hara on Wills, 42 ; 26 *Ga.*, 522 ; 2 Kelly, 47 ; 6 Conn., 270, 275 ; 32 *Ga.*, 601 ; 1 Kel-ly, 20 ; 14 *Ga.*, 286, 370 ; 28 *Id.*, 263 ; Reese's Manual, 97, 100, 276 ; Code, 2414 ; 30 *Ga.*, 167 ; 14 *Id.* 377, 379 ; 32 *Id.*, 601 ; 28 *Id.*, 264 ; 47 *Id.*, 469, 470 ; Reese's Man., 275 ; Bacon's Abg., X, 538 ; Gr. on Ev., §289 ; Phillips on Ev., Cowen & Hill's notes, vol. 3, 1359, 1360, 1361, 1384 ; Jarman on Wills, vol. 1, 711, note (3) *Id.*, [347] ; Wigram, 242 ; Phillips on Ev., Cowen & Hill's notes, vol. 3, [1384], [1385], [1387], [1389], [1428] ; Jarman on Wills, vol. 1, 711, 761, 643, 645, [356] ; 3 Metc. Ky., 156 ; 50 *Ga.*, 526 ; 12 *Id.*, 156, 163 ; 14 *Id.*, 597 ; 62 *Id.*, 169 ; 27 *Id.*, 324 ; Roper on Legacies, [1469, 1472] ; 12 Grattan, 196 ; 1 Jarman on Wills, 52, note *t* and [67] ; *In re* Barden, L. R., 1 Probate and Divorce, 325 ; Code, §2445 ; 28 *Ga.*, 533 ; 1 Wms. on Ex'rs, [255] ; Jarman, vol. 1, [168–9–70] ; *In re* Fraser, L. R., 2 P. & D., 40, 406 ; 24 *Ga.*, 643, 658. .

HOPKINS & GLENN ; J. N. DORSEY ; S. C. DUNLAP, for defendant, cited : 60 *Ga.*, 194 ; 21 *Id.*, 23, 44, 45 ; 14 *Id.*, 362 ; Code, §§2456, 2395 ; 16 *Ga.*, 496 ; 1 Wms. on Ex., 299 ; 20 *Ga.*, 553 ; 40 *Id.*, 575 ; 2 Jarman on Wills, 53 and note, 56, 60 ; 39 *Ga.*, 652 ; 40 *Id.*, 25 ; Wms. on Ex., 1162, 1166 ; 2 Blackstone Com., 279 : 1 Jarman on Wills, 643 ; 1 Redfield on Wills, rule 10, page 426, rule 19, page 427 ; 12 Grattan, 196 ; Am. Prob. cas. vol. 1, 168 ; Redf. on Wills, 434, rule 17, 7th qualification, 435, rule, 23.

JACKSON, Chief Justice.

The following instrument was offered for probate:

"GEORGIA—RANDOLPH COUNTY.

In the name of God, amen. I, Riley Garrett, of of the county of Randolph, and state of Georgia, being of perfect mind and memory, thanks be given unto God, calling unto mind the mortality of body, and knowing that is appointed unto all men once to die, I do make and ordain this my last will testament, that is to say, principally, and first of all, I give and recommend to the earth to be buried in decent christian manner, at the discretion of executors, who shall be Isham Wheelus, and so much of my worldly estate, I give and bequeath unto William Augustus Wheelus, and I do hereby revoke and disannual all other wills, legacies and bequests, confirming this to be my last will and testament.

Is testimony whereof, I have hereunto signed my signature, this 18th day of January, 1844. Signed and sealed this 18th day of January, 1844.

| | |
|---|---|
| ROBERT O'CONNER, | |
| HEZEKIAH BRUKE, | RILEY GARRETT, [L. S.] |
| W. C. PERKINS, | |

Caveat was filed on the ground, among others, that the paper on its face was void for uncertainty.

The evidence for propounders showed that the paper offered was found in deceased's trunk, after his death, with the appearance of having been sealed, but the seal broken.

A photograph found with the will in the same trunk was shown and identified as that of Wm. A. Wheeless.

J. H. Butt testified that deceased had told him a year before his death that Wm. A. Wheeless was the only rela_ tive he had that he recognized.

Propounder then proved by interrogatories that de- ceased was of sound mind; that one of the witnesses, Robert O'Conner, had removed to the state of Florida before the war; that the other two witnesses were dead and proved the handwriting of all the witnesses and of Riley Garrett; that deceased and Isham Wheeless were first cousins, and that Wm. A. Wheeless was Isham Whee-

less' son, and was five or six years old at date of will. That Isham Wheeless died sometime about 1852 or 1853. That there existed very kind and intimate feelings between Riley Garrett and Isham Wheeless.

The evidence for caveators traced up the relationship, and showed that the caveators were first cousins of Riley Garrett, and that there were no nearer relatives living, and that he was never married.

On these facts, the jury found for the propounders; and on the motion for a new trial by the caveators, on the ground of uncertainty on the face of the paper, and others which go to the same point, the court below held that the verdict stand, refusing the new trial, and on that judgment error is assigned.

We think that the paper is not void for uncertainty, but reading it in the light of surrounding circumstances, the intention of the testator may be ascertained. There is hardly a correctly written paragraph in the paper. The testator was illiterate. Certainly he meant to have his body buried, yet he does not mention the word body. It is to be buried at the discretion of executors, and immediately thereafter one executor is named, and but one. We think he meant this executor to pay for the coffin and other things necessary out of the property he left, and the sum of money to be expended is left to his discretion. Therefore the discretion of the executor is alluded to—a discretion as to the sum to be expended as well, as the general arrangement for the burial. This expenditure, though small comparatively, throws light on the next disposition, and the only other disposition which he makes of his property, as follows: "And so much of my worldly estate I give and bequeath unto William Augustus Wheelus." These words cannot mean that so much as was necessary to bury him be left to Wm. Augustus, because he was but six years old, and would hardly be competent to bury him, and because he has already turned that matter over to Isham, and vested him with dis-

cretionary power in regard to his funeral, and of necessity bequeathed to him money enough to do it. What did he mean, then, by the term "so much of my worldly estate"?

We think it pretty clear that he meant so much as remained after the other disposition of part of it for his burial. The illiterate man, leaving out words all through his will, and expressing thoughts in broken sentences, meant undoubtedly, we think, thereby to convey the remainder of his worldly estate to the son of the executor to whom he had entrusted the thing most in his mind—that which he denominates as "principally and first of all"—his burial. Two things he wanted done—first to be buried, and that to be paid for, and secondly and lastiy to give the balance, after paying for that, to the son of the man who was to bury him and pay out of his estate for it, and then to execute the other and next important thing in his mind, to take care of and turn over to the boy the balance.

Turning on the will, in the language of counsel for defendant in error, the light of relationship, and the intention is reflected more clearly. The caveators were not his kindred in his heart. These two were—this father, the executor, and this son, the legatee. The will, with the photograph of the son, he kept in the same trunk together for many years, and he told a witness a year before his death that this legatee was the only relative he recognized, the father then being dead.

So that from the words of the will itself, we think enough may be gathered to hold it not absolutely void for uncertainty ; and that being so, it cannot be refused admission to probate,—especially when, construing this bequest in the light of surrounding circumstances, the intention becomes obvious.

A man has a right to give enough of his property to his executor to have his body buried, and the probate would be necessary for that purpose, and the *factum* being proved, it should stand. But if there had been nothing but the subsequent bequest, and it being objected

to for uncertainty, unless so absolutely void as not to be aided by the rule of construing it by surrounding cir cumstances, the *factum* being proved, the probate should stand, in order that it may have the light of those circumstances thrown on it, if on the issue of *devisavit v. el non,* that light could not be used; for it would not do to defeat a will as void for uncertainty, when it is not so uncertain that parol evidence could not make the writing certain in meaning—not to make a different will, but to construe the writing, and thus carry into effect testator's intention as expressed in it.

So we conclude that the court did not err in overruling the motion for a new trial, and the judgment is affirmed·

Cited for plaintiff in error: 1 Jarm. on Wills, 24, 643, 646, 659, 663, 739.

Judgment affirmed.