## MORGAN *et al. v.* HUGGINS *et al.*

*(Circuit Court, N. D. Georgia.* February 27, 1890.)

**1. WILLS—CONSTRUCTION—UNCERTAINTY—EVIDENCE.**

Construing a will in the following language: "In the name of God, amen. I, Riley Garrett, of the county of Randolph, and state of Georgia, being of perfect mind and memory, thanks be given unto God, calling into mind the mortality of body, and knowing that it is appointed for all men once to die, I do make and ordain this my last will and testament. That is to say, principally, and first of all, I give and recommend to the earth to be buried in a decent, Christian manner, at the discretion of the executors, who shall be Isham Wheelus, and so much of my worldly estate I give and bequeath unto William Augustus Wheelus; and I do hereby revoke and disannul all other wills, legacies, and bequests, confirming this to be my last will and testament. In testimony whereof I have hereunto signed my signature this 18th day of January, 1844,"—*held,* that the decision of the supreme court of the state, (*Garrett* v. *Wheeless,* 69 Ga. 466,) holding that the intention of the testator by this will, read in the light of surrounding circumstances, was, after paying burial expenses, to give the remainder of the estate to William Augustus Wheelus, is the correct construction of this will, and is followed and adopted in this case.

**2. SAME—AFTER-ACQUIRED PROPERTY.**

The Code of Georgia, enacted in 1863, contained the following provision, (section 2461:) "All property acquired subsequent to making of the will shall pass under it if its provisions be sufficiently broad to embrace such property." This provision is prospective only, and after-acquired real estate does not pass under a will made before this provision went into operation, even though the testator did not die until afterwards.

*(Syllabus by the Court.)*

In Equity.

Bill by Morgan and others, as assignees of certain heirs at law of Riley Garrett, to restrain Huggins, his administrator, from selling or otherwise disposing of the property of the estate, and praying an accounting.[1]

*H. H. Perry, P. L. Mynatt,* and *G. A. Howell,* for complainants.

*John L. Hopkins* and *Alexander S. Erwin,* for respondents.

NEWMAN, J. This is a case in equity, and the question before the court at the present stage of the case is the construction of the will of Riley Garrett, deceased, late of this district, which is as follows:

"In the name of God, amen. I, Riley Garrett, of the county of Randolph, and state of Georgia, being of perfect mind and memory, thanks be given unto God, calling into mind the mortality of body, and knowing that it is appointed for all men once to die, I do make and ordain this my last will and testament. That is to say, principally, and first of all, I give and recommend to the earth to be buried in a decent, Christian manner, at the discretion of the executors, who shall be Isham Wheelus, and so much of my worldly estate I give and bequeath unto William Augustus Wheelus; and I do hereby revoke and disannul all other wills, legacies, and bequests, confirming this to be my last will and testament. In testimony whereof I have hereunto signed my signature this 18th day of January, 1844. RILEY GARRETT. [L. S.]

"ROBERT C. CONNER.
"HEZEKIAH BROKE.
"W. C. PERKINS."

[1] The extrinsic evidence may be found substantially in the case of Garrett v. Wheeless, 69 Ga. 466.

After the death of Riley Garrett, in May, 1880, Isham Wheelus, the named executor, having died, the will was offered for probate in the court of ordinary in Hall county, Ga., by William Augustus Wheelus. In this proceeding a *caveat* was filed by the next of kin and heirs at law of Riley Garrett. The *caveat* was on the following grounds:

"(1) Because said alleged will is not a lawful will, because it was not signed, executed, and published as the last will of the said Riley Garrett according to the provisions of the law in such cases made and provided. (2) Because said alleged will is null and void in law for uncertainty as to what was intended to be conveyed by it, as to whom it was intended to convey anything, and for uncertainty as to what was meant by the language used. (3) Because said paper offered for probate is not testamentary in its character, and the court of probate has no jurisdiction to admit the same to probate."

The case thus made up in the court of ordinary was taken by appeal to the superior court of Hall county, Ga., and by writ of error to the supreme court of the state. The final decision in the supreme court, the court of last resort in the state, affirming the judgment of the superior court of Hall county, was in favor of the will, and determined that by the will William Augustus Wheelus took all the property of Riley Garrett, less the expenses of burial. It appears from an examination of the evidence submitted here on this question, and from the report of the case in the supreme court, that substantially the same evidence, so far as material and admissible, has been submitted here as was submitted in the state court. It may be that the evidence offered in this court is somewhat fuller than that offered in the state court, but the leading facts which can properly be considered in construing this will, and that throw light on the question, seem to be substantially the same. The decision by the supreme court of Georgia is reported in the case of *Garrett* v. *Wheeless*, 69 Ga. 466. It may be proper to observe that the complainants in the bill in this court are the assignees of the heirs at law of Riley Garrett, who were the caveators in the proceeding in the state court, and who are therefore in privity with the complainants, and stand in their place as to the effect to be given the former adjudications. It will be perceived that one of the grounds of the *caveat* in the state court was that "said alleged will is null and void in law for uncertainty as to what was intended to be conveyed by it, as to whom it was intended to convey anything, and for uncertainty as to what was meant by the language used." This ground seems to have been urged through the various stages of the case, and was passed on by the supreme court, as appears from the decision. After copying the instrument as above, the supreme court hold "that such a will was not so uncertain as to be void. A will should not be refused to be admitted to probate on account of uncertainty unless it be so uncertain that it cannot be construed by the aid of parol testimony," and then proceeds:

"It appears that the testator in this will was a bastard; that the executor was his first cousin, and the legatee named was the executor's child, six years of age; that he kept his will and a photograph of the boy in his trunk together; and that a year before his death he stated that this legatee was the only relation he recognized, [the father of the legatee having died,] though there

were others nearer of kin in fact.    *Held* that, in the light of these facts, the intention of the testator was to provide for his burial expenses, and leave the remainder of his property to the legatee named."

The decision thus stated, which is copied from the syllabi of the case, is elaborated in the opinion of JACKSON, C. J.   Subsequently, in a case growing out of the administration of the Garrett estate, the supreme court of Georgia, in affirming a judgment awarding the administration to Huggins, the representative of the Wheeless estate, uses this language in commencing the opinion by HALL, J.:

"Riley Garrett, of Randolph county, in this state, on the 18th day of January, 1844, executed his last will and testament, whereby he appointed Isham Wheeless his executor, and gave all his worldly estate to William Augustus Wheeless." *Long* v. *Huggins,* 72 Ga. 776.

So it will be seen that the supreme court of Georgia has held that by this will Riley Garrett provided for his burial expenses, and left the remainder of his property to William Augustus Wheeless; and that in a subsequent case arising from the same estate that court has treated this question as settled.    It is said, however, by complainants here that the court of ordinary in the first case named, and the higher courts on appeal, had no jurisdiction to do more than admit the will to probate; and that all expressions by the supreme court in the opinion cited as to the construction of the last clause were *obiter dicta.*    In brief, the question is that the jurisdiction of the court of ordinary is confined to the question of the probate of the will, and does not extend to the construction of the will.    It will be perceived in the grounds of the *caveat* that the strong point made by the caveators on the right of the propounders to have the will admitted to record was the same urged with so much force here, viz., that it was void for uncertainty; that the language used had no meaning; and that, without extrinsic evidence, it was (except as to the appointment of an executor, and providing for the burial expenses) an insensible thing.    It would seem difficult for the court to determine that the instrument was not meaningless without finding some meaning.    It might have found one of several different meanings; but where it is held upon an issue of this sort that the paper has a definite, specific meaning, it is not so clear that this determination is without the jurisdiction of the court reviewing the judgment of the probate court on the question of the probate of the will.    Attention has also been called in argument to the last paragraph in the opinion of the supreme court of the state as follows:

"A man has a right to give enough of his property to his executor to have his body buried, and the probate would be necessary for that purpose; and, the *factum* being proved, it should stand.    But if there had been nothing but the subsequent bequest, and it being objected to for uncertainty, unless so absolutely void as not to be aided by the rule of construing it by surrounding circumstances, the *factum* being proved, the probate should stand, in order that it may have the light of those circumstances thrown on it if, on the issue of *devisavit vel non,* that light could not be used; for it would not do to defeat a will as void for uncertainty when it is not so uncertain that parol evidence

could make the writing certain in meaning,—not to make a different will, but to construe the writing, and thus carry into effect testator's intention as expressed in it."

It is said that the expressions used in this clause indicate that the supreme court intended to leave the construction of the will for future determination. An examination of the case does not sustain this argument. After three pages of the opinion are devoted to reasoning in favor of the sufficiency of the language in the will, which has been quoted, to convey the remainder of the estate, after paying burial expenses, to William Augustus Wheelus, the language which has just been given from the last paragraph of the opinion is used. There is much more reason for treating this last paragraph as *dicta* of the court than the main portion of the opinion as contended by the complainants. The head-notes of the case, which are supposed to embody a succinct statement of the points decided are devoted entirely, as will be seen, to the question of William A. Wheelus' rights under the will. It seems clear that the supreme court understood that the construction of this will was properly before it, and that it intended to determine it. It is not deemed necessary, however, to determine whether or not this issue as presented here is strictly *res adjudicata*. As persuasive authority the opinion of the supreme court of the state must necessarily have very strong and weighty effect. With the same will before it, with substantially the same surrounding circumstances, and with the same parties thereto, so far as legal *status* is concerned, with a will made, and a testator dying in Georgia, and all of the property of the estate, both real and personal, in the state, and with the same issues made, the decision of that court, even if not controlling, must be, as stated, very influential here.

But, construing this will independently of the decisions of the supreme court of the state, is it void for uncertainty?. The argument for complainants in this case is to this effect: That the intention of the testator is not to be derived from extrinsic evidence unless that intention is expressed; that the question is not what the testator intended, but what he expressed; that the intention is to be obtained from the will, and not the will from the intention; and that, even if we are absolutely certain from extrinsic evidence as to what the testator intended, still, unless he has expressed it, the will is a nullity. A very elaborate and well-prepared brief and argument has been submitted with quite an array of authorities on this line, all ably presented. The oral argument to the same effect has been thorough and complete. The position that the intention of the testator must be gathered from the will itself is undoubtedly correct. It is equally true, however, that the court must place itself in the position of the testator, and to that end may gather the circumstances surrounding the testator at the time the will was made for the purpose of arriving at this intention. *Allen* v. *Allen*, 18 How. 385. Sections 2456, 2457, Code Ga., relating to this subject are as follows:

"(2456) In the construction of all legacies the court will seek diligently for the intention of the testator, and give effect to the same as far as it may be consistent with the rules of law; and to this end the court may transpose sen-

tences or clauses, and change connecting conjunctions, or even supply omitted words in cases where the clause as it stands is unintelligible or inoperative, and the proof of intention is clear and unquestionable; but if the clause as it stands may have effect, it shall be so construed, however well satisfied the court may be of a different testamentary intention. (2457) When called upon to construe a will, the court may hear parol evidence of the circumstances surrounding the testator at the time of its execution. So the court may hear parol evidence to explain all ambiguities, both latent and patent."

Taking this will and the evidence submitted here, and reading it, in the language of the supreme court of Georgia, "in the light of surrounding circumstances," is it not clear what the testator intended? It is not denied that the effect of the decision of the state court was to determine the right of the propounders to have the will admitted to probate, the contention being that its construction was left open. On the face of the paper it is perfectly clear that he intended to make a will, and by it it must be supposed to dispose of all his property. He appoints Isham Wheelus, the father of William Augustus, his executor, and it is conceded, although the language is imperfect, that he provided for the burial of his body, and then is the remaining clause, which has caused such extended discussion in the state court and here, "and so much of my worldly estate I give and bequeath to William Augustus Wheelus." It must be clear, as stated, that he intended by this paper to dispose of all his property, and except the provision for burial expenses there is no other disposition of property than that contained in the words last quoted. Now, can there be any reasonable doubt, from an examination of this paper alone, that the testator intended to leave the remainder of his property to William Augustus Wheelus? No other meaning can be given it consistently with the view that by this paper he intended to dispose of all his property. It is clear that he did so intend, and equally clear that the only construction which can effectuate that intention is the one just stated. Assume that nothing can be inserted, as is so strongly contended, is the will as it stands intelligible, viewed from the position in which the testator stood when it was made, and gathering by extrinsic evidence the circumstances then surrounding him for that purpose? A case coming as close to this in its facts as any other cited in the argument is that of *In re Bassett's Estate, (Perkins v. Fladgate,)* L. R. 14 Eq. 54. The testatrix there made a will which she declared to be her last will and testament, by which she appointed an executor, and, after giving several legacies, proceeded as follows:

"After these legacies and my doctor's bills and funeral expenses are paid, I leave to my sister Mary Perkins, * * * without any power of control whatsoever of her husband, John Perkins. In case of her death to be equally divided amongst the children or grandchildren."

This was held to be a good gift of the residue of the estate. Sir JAMES BACON, V. C., in his opinion, says:

"I should feel the greatest objection to supplying any words in a will, but I do not think this will unintelligible as it stands, and accordingly I do not see the necessity of supplying any words. I read the will as intended to dispose of the whole of testatrix's estate and effects. That must have been her

intention, as is generally the case, when she set about making her 'last will and testament,' that would vest the whole of her estate in the executor. Then she gives certain legacies which it was the duty of the executor to pay. Then she says: 'After these legacies * * * are paid, I leave to my sister Mary Perkins, * * * without any power or control whatsoever of her husband John Perkins. In case of her death to be equally divided amongst her children or grandchildren.' The intention of the testatrix is express. If I could find any indication of an intention to give anything else, as, for instance a legacy of £500, it would be different; but what other meaning can be attributed to these words except that which I have suggested? What answer can be given to the question, 'What did she mean to leave?' except this: the entirety of the residue of her estate. Where, then, is the difficulty? No doubt the word 'residue,' if supplied, would satisfy the meaning; but that only shows that the meaning of the testatrix may be expressed by other words than those which she has used. The cases which have been cited furnish no rule whatever for the interpretation of the present case. If the whole of the property had been realized and placed on a table, the executor must have first paid out the legacies, and then handed over all the rest to the testatrix's sister."

The same argument presented in this was presented in that case, as shown by brief of counsel in the report of that case, and yet the conclusion of the vice-chancellor was as above quoted. There was no language whatever in that will to show how much was left to Mary Perkins, and yet, as it was clear that the testatrix set about making her last will and testament, and there was no other disposition of her property after certain legacies except the one before the court for construction, it was held that the intention was to give the residue. All that is said in favor of giving effect to that may with equal force be said of the will now before the court. The case of *Mohun* v. *Mohun*, 1 Swanst. 201, cited by complainants, and favorable to them, was decided three-quarters of a century ago, and is not authority even in England now, as is evident from the decision in the case *In re Bassett's Estate, supra*.

While the case of *Hawman* v. *Thomas*, 44 Md. 30, strongly relied on by complainants' counsel, is very much like the case at bar, still it does not appear from the report of the case that the facts were as here. The part of the will there construed is stated in the report to be the second clause. How many other clauses in the will there were is not shown in the report of the case. It does not furnish simply and clearly the question presented in this case, or in the case *In re Bassett's Estate, supra*. It is probably true, however, that the decision of the supreme court of Georgia, in construing this will, and the views of this court, are not in harmony with *Hawman* v. *Thomas*. The case cited of *Allen's Ex'rs* v. *Allen*, 18 How. 385, is unlike this in its facts, although supporting the general position of complainants as to the strict rule governing the admission of extrinsic evidence in the interpretation of wills; which position it is not considered necessary to controvert. Nor is it necessary to go further into the many authorities cited to discuss the question of the extent *aliunde* testimony will be heard for the purpose of explaining ambiguities, latent and patent, and the nice distinctions and differences in the several lines of authorities. The law in Georgia on this subject is now embodied in the Code, § 2457. The view taken

by this court of this will and the law controlling its interpretation seems to render consideration of this phase of the law superfluous.

There is no sufficient reason to justify this court in departing from the decision of the supreme court of the state. On the contrary, there is much reason to adhere to it as a correct rule to be adopted in the construction of this will.

The other question submitted in this case, and which may now be disposed of, is, what class of property passes by this will? The Code of Georgia (section 2461) declares:

"All property acquired subsequent to the making of the will shall pass under it if its provisions be sufficiently broad to embrace such property."

The Code containing this provision went into effect January 3, 1863. The supreme court of the state, in *Gibbon* v. *Gibbon*, 40 Ga. 562, held that this section of the Code "is prospective only, and after-acquired real estate does not pass under a will made before the Code went into operation, even though the testator did not die until afterwards." The facts here are like the facts there, so far as the question presented is concerned. The will here as there was made before the Code, and here as there the testator died after the Code went into effect. That decision must be controlling here, and the conclusion is that the after-acquired real estate of the testator does not pass by this will. This disposes of the questions that can now be settled, and an order may be taken for a reference to a master in order that the condition, extent, and character of the estate may be ascertained, and the proper accounting had, that final decree may be rendered in the case.