JOSEPH WILKINS, TENANT, AND FRANCIS G. BAILEY, JOSEPH PEACOCK, AND SAMUEL BAILEY, EXECUTORS OF MICHAEL ALLEN, DECEASED, PLAINTIFFS IN ERROR, *v.* DAVID ALLEN, MARTHA ALLEN, CATHERINE ALLEN, AND ISABELLA ALLEN.

Where a testator, in Pennsylvania, gave to his wife a life estate in the homestead and two lots, and charged upon his goods and lands an annuity to her, but did not mention his lands in any other part of the will, and then, after sundry legacies, bequeathed the surplus to be applied to the purposes of the Presbyterian church, this surplus does not relate to his lands, which his heirs will take.

By the law of Pennsylvania, heirs must take, unless they are disinherited by express words or necessary implication.

Evidence of extrinsic circumstances, such as the amount and condition of the estate, &c., cannot be received to control the interpretation of the will. It is only admissible to explain ambiguities arising out of extrinsic circumstances.

THIS case was brought up, by writ of error, from the circuit court of the United States for the western district of Pennsylvania.

It was an ejectment brought by the Allens, who were aliens and subjects of the Queen of Great Britain and Ireland, to recover four undivided fifth parts of one undivided half of a lot in Pittsburg. They were heirs of Michael Allen, and the question was, whether Allen, the testator, had devised the property in question by his will.

The substance of the will is given in the opinion of the court, as are also the rulings of the circuit court.

It was argued by *Mr. Williams,* for the plaintiffs in error, and by *Mr. Loomis* and *Mr. Stanton,* for the defendants.

The points made by *Mr. Williams* are thus stated in his brief: The case presents two questions only : —

1st. Whether the terms of the will are sufficient, *proprio vigore,* and interpreting the same by the context, to carry the real estate to the executors; and,

2d. Whether the interpretation thereof may not be aided, if necessary, by extrinsic circumstances, to wit: memoranda, declarations, and the actual amount and condition of the estate, as offered to be shown by the defendants.

On the first of these questions, and for the purpose of showing that the intention (which is only another name for the will) of the testator, is the great point of inquiry, and must be collected from the whole writing, and every word and sentence thereof; and that to serve _t, words may be used either in the technical or general sense, and even supplied, transposed, or changed, the counsel for the plaintiffs in error will refer to the cases of Ruston *v.* Ruston, 2 Dall. 244; Findlay *v.* Riddle, 3 Binn. 149; Lynn *v.* Downes, 1 Yeates, 518; Beltzhoover *v.* Costen, 7 Barr, 16; Turbett *v.* Turbett, 3 Yeates, 187; Hunter's estate, 6 Barr, 97; Earp's Will, 1 Par. 457; Den *v.* Blackwell, 3 Green, 386; Den *v.* McMurtrie, Ib. 276; 1 Jarman on Wills, chap. xvii., and cases there cited.

That, as a consequence of the foregoing rules, real estate may pass under a devise by any form of expression not properly and technically descriptive thereof, if such an intent can be collected from the context — that general expressions may be restrained and special expressions enlarged, and the same words sometimes understood in one sense, and sometimes in another, will be shown in the cases of Huxtep *v.* Brooman, 1 Brown C. C. 437; Taylor *v.* Webb, 2 Sid. 75; Pitman *v.* Stevens, 15 East, 505; Wilce *v.* Wilce, 5 Moore & Payne, 682; Tolar *v.* Tolar, 3 Hawks, 74; Hope *v.* Taylor, 1 Bur. 268; Doe *v.* White, 1 East, 33; Den *v.* Trout, 15 East, 394; King *v.* Shrives, 4 Moore & Scott, 149; Anon. 3 Dale, 477; Jackson *v.* Housel, 17 Johns. 281; Ferguson *v.* Zepp, 4 W. C. C. R. 645; Hogan *v.* Jackson, Cowper, 299; Marchant *v.* Twisden, Gilb. Eq. Ca. 30; Wilkinson *v.* Merryland, Cro. Car. 447, 449; Cliffe *v.* Gibbons, 2 Ld. Raym. 1324; Bullard *v.* Goffe, 20 Pick. 252; Doe v. Rout, 7 Taunt. 79; Woolham *v.* Kenworthy, 9 Ves. 137; Timewell *v.* Perkins, 2 Atk. 102; Roe *v.* Yeud, 2 B. & P. (N. R.) 214.

That the circumstance of a previous specific devise of land,

always favors the extension of the subsequent general words to property of the same description, although even the absence of that circumstance is not considered as conclusive against it, even when the subsequent terms are associated with words descriptive of personal property only. 1 Jarman on Wills, 575.

That the word "surplus" and its equivalents, without more, may operate by reference, to carry either realty or personalty, or both, he will refer particularly to the cases of Bebb v. Penoyre, 11 East, 160; and Dewey v. Morgan, 18 Pick. 295.

That the interpretation of the testator's language is to be made with reference to the law and usages of the place of his actual domicile, 2 Greenl. Ev. § 671; Story's Confl. of Laws, § 479, f.; Harrison v. Nixon, 9 Pet. 483; and that, by the law of Pennsylvania, the whole interest of a testator passes without words of inheritance or perpetuity, unless a different intent appear; act of 8th April, 1833, § 9, (Ph. L. 249;) Purdon's Dig. 844; that real estate is assets for the payment of debts and legacies are chargeable on lands where the personalty is insufficient to meet them; Nichols v. Postlethwaite, 2 Dall. 131; English v. Harvey, 2 Rawle, 309; and that, therefore, the habit of treating both as equally a fund to pay any demand, would not probably be forgotten by a testator when making his will. Ib.

On the second and last of the questions proposed, namely, whether the construction may be aided by proof of extrinsic circumstances, the counsel for the plaintiff,

To show that the court may and ought to put themselves in the place of the testator, by looking into the state of his property, and the circumstances by which he was actually surrounded, will refer to 1 Greenl. Ev. §§ 287, 288, 289, & 290, and notes; Ruston v. Ruston, *Supra* (2 Dall. 244); Brownfield v. Brownfield, 8 Har. 59; Root v. Stuyvesant, 18 Wend. 257; Jarvis v. Buttrick, 1 Met. 480; Morton v. Perry, Ib. 446; Fox v. Phelps, 17 Wend. 393; Wigram on Wills, 5th proposition, page 5, and cases cited in illustration thereof.

That when words, used in their strict and primary sense, are insensible, with reference to extrinsic circumstances, the court may look to those circumstances to see whether the meaning would be sensible in any popular or secondary sense, of which, with reference to those circumstances, they are capable, (third proposition, Wigram on Wills,) and that even without reference to such distinction, the court may look into the facts, where the construction claimed would render the devise or bequest inoperative. Smith v. Smith, 1 Edw. Ch. 189; Whilden v. Whilden, Riley's Ch. 205; Trustees v. Peaslee, 15 N. H. 317; Kinsey v. Rhem, 2 Iredell, 192; Ayres v. Weed, 16 Conn. 291; Hand v.

Hoffman, 3 Halstead, 71; Allen *v.* Lyons, 2 Wash. C. C. R. 475, and cases cited of misnomer and misdescription generally. And that even the declarations of the testator, to prove a fact collateral to the question of intention in aid of the interpretation of words, may be admitted in evidence. 1 Greenl. Ev. § 291 and note; Trustees *v.* Peaslee, 15 N. H. 317; Ryerss *v.* Wheeler, 22 Wend. 148.

The plaintiffs' counsel will, moreover, in aid of the offer of evidence to show the inadequacy of the personal estate to satisfy the previous legacies, insist on the assertion of the substantive fact of a "considerable surplus," by the testator himself, which was only true upon the hypothesis that he did include real estate, in his estimate and devise, as necessitating a reference to the actual condition of his affairs at the time of making his will, for the purpose of showing that there was no such property as he is supposed to have intended by the word "surplus," while there was property answering the description of a surplus upon which the will might operate.

In further support of the proposition that the construction of the will in question may be aided and controlled by the proof of extrinsic facts and circumstances, the counsel for the plaintiffs in error will refer also to 1 Jarm. on Wills, 355, and note 1; Wilde's case, 6 Rep. 17; Roper, 60, 67 (3d ed.); Cartwright *v.* Vawdry, 5 Ves. 530; Lord Woodhouselee *v.* Dalrymple, 2 Mer. 419, Rose *v.* Bartlett, Cro. Car. 293; Davis *v.* Gibbs, 3 P. Wms. 26; Knottsford *v.* Gardiner, 2 Atk. 450; Thompson *v.* Lawley, 2 B. & P. 403; Day *v.* Trig, 1 P. Wms. 286; Fonnereau *v.* Poyntz, 1 Bro. C. C. 472; Druce *v.* Dennison, 6 Ves. 397; Finch *v.* Inglis, 3 Bro. C. C. 420; Attorney-General *v.* Grote, 3 Mer. 316; Colpoys *v.* Colpoys, Jac. 463; Smith *v.* d. Doe Jersey, 2 Brod. & Bingh. 553; Jeacock *v.* Falconer, 1 Bro. C. C. 296; Selwood *v.* Mildmay, 3 Ves. 306; Doe d. Belasyse *v.* Lucan, 9 East, 448; Attorney-General *v.* Vigor, 8 Ves. 256; Standen *v.* Standen, 2 Ves. 589; 3 Kent, 334, 335; Lowe *v.* Lord Huntingtower, 4 Russ. 532; 8 Rep. 155; Rewalt *v.* Ulrich, 11 Har. 388.

The points made by *Mr. Loomis* and *Mr. Stanton* were the following:—

1. In the disposition, by the will of Michael Allen, of the surplus remaining after the payment of all claims and bequests, there is neither doubt, uncertainty, nor ambiguity.

2. If that disposition be doubtful or uncertain, it must receive appropriate construction from the words of the will itself, and no parol proof or declaration ought to be admitted out of the will to ascertain it. Bradford *v.* Bradford, 6 Wharton, 244;

Weatherhead's Lessee v. Baskerville et al. 11 How. 357, 358, 359; Murrell v. Livermore, 7 Eng. Com. Law, 9; 5 Barn. & Ald. 18.

3. In determining such construction, the heir at law is not, and especially those standing in the place of the common-law heir are not, to be disinherited, except by express devise, or by implication so inevitable that an intention to the contrary cannot be supposed. 1 Powell on Devises, 199; French v. M'Ilhenny, 2 Binney's Rep. 20; Clayton v. Clayton, 3 Binney's Rep. 484; Brown v. Dysinger et al. 1 Rawle, 415; Finley v. King's Lessee, 3 Pet. 379; Bradford v. Bradford, 6 Wharton, 244; Doe on dem. Spearing v. Buckner, 6 Term Rep. 611, 612, 613; Hayden v. Stoughton, 5 Pick. 536; Roosevelt v. Heirs of Fulton, 7 Cowen, 79, 187; Roper on Wills, 352, 358.

4. The application of the principles embraced in the last two points to the construction of the disposition before mentioned, will show clearly and conclusively that the title of the heirs of the testator to the real estate, of which he died seised, has not been thereby devested.

5. Parol evidence cannot be adduced to contradict, add to, or explain the contents of a will. Parol evidence of the actual intention of a testator is inadmissible for the purpose of controlling or influencing the construction of the written will. No word or phrase in the will can be diverted from its appropriate subject or object by extrinsic evidence. Wigram on Wills, 1st and 2d Rules; Ib. 24, 27, 80, 81, 82, 88–92, 96, 130; 1 Jarman on Wills, c. 14, pp. 349, 358; 11 How. 357, 358, 359; Farrar v. Ayres, 5 Pick. 409; Barrett v. Wright, 13 Pick. 48; Mann v. Mann, 14 Johns. 9, 14; S. C. 1 Johns. Ch. 231.

6. There is but one case in which parol evidence of intention can properly be admitted, and that is where the meaning of the testator's words is neither ambiguous nor obscure, and where the devise is, on the face of it, perfect and intelligible; but from some of the circumstances admitted in proof, an ambiguity arises as to which of the two or more things, or which of the two or more persons, (each answering the words in the will,) the testator intended to express. 1 Greenl. Ev. § 289; Hiscocks v. Hiscocks, 5 Mee. & Wels. 363, 367; Atkinson's Lessee v. Cummins, 9 How. 486; Miller v. Travers, 8 Bingh. Rep. 244; 21 Eng. Com. Law Rep. 290; Aspden Estate, 2 Wallace's Rep. 448.

7. A testator's parol declarations are not admissible to control the construction of his will, nor is evidence, as to the state of his property, admissible for that purpose. Ryeres v. Wheeler, 22 Wend. 151; Fonnereau v. Poyntz, 1 Bro. Ch. R. 472; Roberts on Wills, 24, 34; Brown v. Selwyn, Cases Temp,

33 *

Talbot, 240; Attorney-General v. Grote, 3 Mer. 316; 10 Wheat. 229; 3 Halsted, 71.

Mr. Justice CATRON delivered the opinion of the court.

Michael Allen, of the city of Pittsburg, made his will in 1849, by which he bequeathed to his wife, for life, his dwelling-house in said city, with two lots of ground occupied by him and her as a garden. He also gave her the household furniture and library. " And still furthermore," he declares, " that, first and foremost, there shall be secured to my dear wife, on my real and personal estate, an annuity of twelve hundred dollars a year, to be punctually paid semiannually during her lifetime, and that my executors pay all the taxes on the premises occupied by my dear wife during her lifetime."

The testator then bequeathes : 1st, To the five children of Dr. Robert Wray, five hundred dollars each. 2d. To the managers of the orphan asylums of the cities of Pittsburg and Alleghany, two thousand dollars each. 3d. To the pastor and sessions of the First Presbyterian Church, two thousand dollars. 4th. To the general assembly of the Presbyterian church, ten thousand dollars. 5th. To the trustees of the board of sessions of said general assembly, four thousand dollars. 6th. To the Foreign Evangelical Society, located in New York, three thousand dollars. 7th, 8th, and 9th, he gave for the use of the Presbyterian church, eleven thousand dollars. 10th. To the American Bible Society, six thousand dollars. 11th. To the American Tract Society, four thousand dollars. 12th. For the use of the Sunday School Union, situate in Philadelphia, four thousand dollars.

He next declares : "'As to my debts, they will amount to very little ; but, and after paying all claims and bequests, there will remain a considerable surplus, which I give and bequeathe in trust to my executors, be the same more or less, to be applied to the religious and benevolent purposes of the several institutions of the general assembly of the Presbyterian church in the United States of America, as before mentioned ;" and then constitutes and appoints his executors (who are the plaintiffs in error) to carry out the provisions of the will.

The defendants in error are the heirs at law of Michael Allen. They sued his executors in ejectment to recover a portion of the lands situate in the city of Pittsburg, of which he died seised, insisting that the lands did not pass by the will.

The residuary clause was supposed to be of doubtful meaning and obscure. To remove the alleged obscurity, the defendants below offered to prove on the trial, "from memoranda made by the testator at the time of the execution of said last

will and testament, and upon the basis of which the same was prepared by him, and also by declarations made by him at and about the same time, what was his real meaning in the employment of the word 'surplus' in the residuary clause of said will, and that the same was intended to comprehend his whole remaining estate, as well real as personal."

"And further, to show by other evidence, besides the said memoranda, the actual amount and condition of the personal estate at the time of the execution of the said last will and testament, as well as at the period of the testator's death, and that the same was entirely insufficient, at either of the said periods, to pay the specific and pecuniary legacies provided therein; and this, for the purpose of explaining the meaning of the testator in the said residuary clause, and the employment of the said word 'surplus' therein, by showing that, if the same did not embrace the real estate, the said residuary clause would be entirely inoperative, for the reason that there was, in point of fact, under such construction, at neither of said periods, any surplus whatever, as supposed and declared by the testator himself."

On motion of the plaintiffs, the court rejected the evidence, and instructed the jury that no title vested in the executors by the residuary clause.

On this state of facts, the first question presented for our consideration is, whether the terms of the will are sufficient in themselves, when interpreted by their context, to carry the real estate to the executors?

As, in this instance, the testator's language must be construed with reference to the laws and policy of the country of his domicile, it is our duty to ascertain what the laws and policy of Pennsylvania are, so far as they may have a controlling influence in the construction of this will.

In the first place, Pennsylvania has only so far altered the English common law as to substitute all the children for the sole heir, carrying out this rule of descent through the collateral branches. This is the will the law makes in case of intestacy, and is the policy of the State. Under the law, the heirs must take, unless they are "disinherited by express words, or necessary implication." "Conjecture, nor uncertainty, shall never disinherit him." Such was the ground assumed by counsel in the case of Clayton v. Clayton, 3 Binney, 481, and which assumption was sustained by the court; ib. 486. Chief Justice Tilghman says: "The rule of law gives the estate to the heir, unless the will takes it from him; and, in order to take it from him, it must give it to some other person. Thus we are brought back to the question, are there any words in the will sufficient to convey more than an estate for life to the devisees. I can find none."

In the case referred to, the testator devised a homestead to his niece, Sarah Evans, and her children, without adding the word heirs. That he intended to give an estate in fee was hardly open to controversy; but the words of the will did not carry the fee, and the court refused to follow a doubtful intention. It there came fairly up to the rule laid down in the English case of Mudge *v.* Blight et ux. Cowp. 355, that "where there are no words of limitation, the court must determine in the case of a devise affecting real estate, that the devisee has only an estate for life, because the principle is fully settled and established, and no conjecture of a private imagination can shake a rule of law. If the intention of the testator is doubtful, the rule of law must take place; and so if the court cannot find words in the will sufficient to carry a fee. Though they should themselves be satisfied beyond the possibility of a doubt, as to what the intention of the party was, they must adhere to the rule of law."

This decision was made in 1811, and the principles then laid down have since been adhered to with uncommon care and strictness.

In speaking of expressions in a will necessary to disinherit the heir, Chief Justice Gibson, in delivering the opinion of the court in the case of Bradford *v.* Bradford, 6 Wharton, 244, says: "The intention must be manifest, and rest on something more certain than conjecture. The court must proceed on known principles and established rules, not on loose conjectural interpretations, nor considering what a man may be imagined to do in the testator's circumstances. The principle is applicable in all its force in a case like the present, in which the question goes to the birthright of those who, standing in place of the common-law heir, are not to be disinherited except by express devise, or, as is said in 1 Powell on Devises, 199, by implication so inevitable that an intention to the contrary cannot be supposed."

It is there admitted that when the testator provided that "all his worldly goods of all sorts and kinds" should be vested in trust and held as one fund, for a hundred years, and his children and their descendants should receive the rents and profits, that he most probably intended to include his lands. This, however, (the court declares,) is no more than a confident conjecture, and that it must come at last to an analysis of the testator's language to ascertain the legal meaning of the will.

Now, testing the will before us by these rules, and where can any provision be found in it showing a plain intention to disinherit the heirs? The lands are never named except where the wife is given a life estate in the homestead, and two lots, and, secondly, where her annuity of twelve hundred dollars is imposed on the goods and lands as a charge.

But as the residuary clause is mainly relied on, as carrying the real estate to the executors, it is proper that some further notice should be taken of its import. The testator declared that his debts amounted to very little, and that, after paying all claims and bequests, there would remain a considerable surplus, and this he bequeathed to his executors, to be applied to religious and benevolent purposes. He did not indicate any new fund, nor a surplus arising from the sale of lands, in the concluding clause of the will more than in any previous clause, where he provided for the support of the Presbyterian church.

The terms of the will, *proprio vigore*, being insufficient to disinherit the heirs, the next question is, whether the interpretation thereof may not be aided by extrinsic circumstances, namely, memoranda, declaration, and the actual amount and condition of the estate, as offered to be shown by the defendants below.

That the court may put itself in the place of the testator, by looking into the state of his property, and the circumstances by which he was surrounded when he made the will, is not only true as a general proposition, but without such information it must often happen that the will could not be sensibly construed. Wigram (10, 60) lays down the rule with much distinctness. Such evidence, however, is only admissible to explain ambiguities arising out of extrinsic circumstances, as to persons provided for, objects of disposition, and the like. For instance, if the testator gave to his grandson, J. S., a plantation, and he had two grandsons of that name; or he devised his son J. his plantation on a certain river, and he had two plantations there,—in each case proof might be heard to show the person or thing intended. But evidence cannot be heard to show a different intention in the testator from that which the will discloses.

Such is the established doctrine of this court, as was held in the case of Weatherhead *v.* Barksdale, 11 How. 357.

The only English case we will refer to is, that of Miller *v.* Traverse, 8 Bingh. 248. There the testator devised and vested in trust " all his freehold and real estates whatsoever in the county of Limerick, and the city of Limerick." At the time of making the will, he had no real estate in the county of Limerick, but had a small estate in the city of Limerick, and considerable real estate in the county of Clare; and the question was, whether the devisees could be admitted to have an issue and trial at law on the ground that they offered to prove that, by the original draft of the will, the estates in Clare were included, and the county left out by oversight or mistake; and also that the testator so expressed himself.

The lord chancellor was assisted by the chief justice of the common pleas and the chief baron, and they all concurred in

holding that the evidence offered could not be heard to change the import of the will, and refused the issue. And so it is manifest here, that if the evidence were to show all that is assumed for it, yet it could not be heard to affect this will.

It is ordered that the judgment of the circuit court be affirmed.