## OADES *v.* MARSH.

WILLS—CONSTRUCTION—EXTRINSIC EVIDENCE.

A testator bequeathed to his wife, in trust for her maintenance and the maintenance of a child yet unborn, "12 shares of stock in the steam barge J.;" to the child, four shares, to be divided, if he should die before becoming of age, among three persons named; and to two sisters, a half interest each in one undivided share, to be divided, on the death of either or both, among four persons named. Further bequests of 10 shares were made to the children and grandchildren of the testator, after which the will provided for money legacies, aggregating $550, should there be any surplus then remaining, and for a *pro rata* apportionment as to such legacies in case of a deficiency; and, finally, that *any* residue or remainder should go to the testator's wife. Upon a bill filed to construe the will, it appeared that the testator had at one time owned the steam barge J., but that he had transferred the boat to a corporation, and that, at the time of the execution of the will, he owned no stock in or title to the boat itself; that the sole property of the corporation was the barge in question, and that the testator owned 600 shares of the corporate stock; that, while such shares were of the par value of $50, the testator always spoke of his interest as shares of $1,000 each; and that, when he drew his will, he gave to the scrivener a memorandum of his assets, in which he referred to this stock as "30 shares stock in steam barge J., $30,000." *Held,* that a bequest of shares of stock in the steam barge J. should be construed as a bequest of 20 times the number of shares in the corporation.

Appeal from Wayne; Frazer, J. Submitted October 8, 1896. Decided December 18, 1896.

Bill by Walter H. Oades and another, executors of the last will and testament of John Oades, deceased, against William Marsh, administrator of the estate of Alvira S. Marsh, deceased, and others, to construe a will. From a decree for complainants, defendant Marsh appeals. Affirmed.

John Oades died testate September 8, 1893, leaving a widow, and several children by a former marriage, and one by his second marriage, who was born after the will was executed. After his death his widow married William Marsh. She died before this suit was instituted. All parties interested in the will were made defendants. The material portions of the will are as follows:

"*Third.* I hereby give and bequeath to my wife, Mrs. Alvira Oades, in trust, 12 shares of stock in the steam barge John Oades, for her maintenance and the maintenance of her child, to me yet unborn, until it becomes of age, when said trust shall cease.

"*Fourth.* I give and bequeath to my child, yet unborn, four shares of stock in the steam barge John Oades, with all its profits or interests, to be held in trust until it shall become 21 years of age. Should this child not live to become of age, then this bequest shall be divided among my three children, Mrs. Lucy Thompson, of Detroit, Mrs. Mary Hurd, of Utica, N. Y., and Walter H. Oades, of Detroit, or their heirs, share and share alike.

"*Fifth.* I give and bequeath to my daughter Mrs. Lucy Thompson, of Detroit, four shares of stock in the steam barge John Oades.

"*Sixth.* I give and bequeath to my daughter Mrs. Mary Hurd, of Utica, N. Y., four shares of stock in the steam barge John Oades."

"*Eighth.* I give and bequeath to my grandchildren George, Lena, and John Thompson, of Detroit, two undivided shares of stock in the steam barge John Oades, share and share alike."

"*Tenth.* I give and bequeath in trust to my sisters, Mrs. Rozell, of Clayton, N. Y., and Mrs. Betsy McKee, of Iowa, one-half interest each for life in one undivided share of stock in the steam barge John Oades. On the death of either or both sisters, their share shall be divided between Henry, Minnie, and Eva Johnson and Libbie Kenyon, all of Clayton, N. Y., share and share alike."

"*Fourteenth.* I hereby order and direct my executors to sell, transfer, or dispose of so much of the remaining stocks not bequeathed as shall satisfy and redeem my three notes or indebtedness as may be against me.

"*Fifteenth.* If any surplus remaineth after the above-mentioned bequests are satisfied and my just debts paid, I desire the sum of $150 to be given to Mrs. Maggie

Collins, of Clayton, N. Y., for her services rendered to my sister Mary Collins, deceased; to my sister-in-law Mrs. Talmage the sum of $200; and to my niece Mrs. Vosburg the sum of $200. Should there be a deficiency to meet this last bequest in full, then the same shall be made *pro rata* to the amount remaining.

"*Sixteenth.* Any residue or remainder I give and bequeath to my wife, Mrs. Alvira Oades."

The complainants qualified as executors, and filed this bill to obtain a construction of the will.. It is alleged in the bill that the testator intended to give each beneficiary 20 times as many shares of stock as are therein mentioned, and that, where the will reads "one share of stock in the steam barge John Oades," the same was intended by testator to read, and should read, "20 shares of stock in the Peninsular Transit Company." The defendant Marsh, administrator, answered, admitting some of the allegations of the bill to be true, and as to the others the answer alleged that he had no knowledge, and left the complainants to their proofs. The other defendants, legatees mentioned in the will, answered, admitted the allegations of the bill to be true, and asked that the prayer thereof be granted. Proofs were taken in open court, which granted a decree according to the prayer of the bill, and construed the will to mean that the expression in the third clause, "12 shares of stock in the steam barge John Oades," meant "240 shares of stock in the Peninsular Transit Company," and that the other clauses should be similarly construed. From this decree the administrator appeals. The further statement of essential facts will be found in the opinion.

*Conely & Taylor*, for complainants.

*Otto Kirchner*, for appellant.

GRANT, J. (*after stating the facts*). The learned counsel for the complainants insist that the case comes within the rule as stated by Wigram in his fifth proposition:

"For the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will. * * * Examples illustrating the fifth proposition above stated might be multiplied without end. They appear to justify the conclusion that 'every claimant under a will has a right to require that a court of construction, in the execution of its office, shall —by means of extrinsic evidence—place itself in the situation of the testator, the meaning of whose language it is called upon to declare.' It follows that if, with the light which that situation alone affords, the testator's meaning can be determined by a court, the court which so determines does, in effect, declare that the testator has expressed his intention with certainty, or, in other words, that his will is free from ambiguity. There is no other criterion of legal certainty in a will." Wig. Wills, 142, 161, 162.

See, also, 1 Jarm. Wills, 422, 423 (6th Ed. 428); *Tuxbury* v. *French*, 41 Mich. 7; *Dakin* v. *Dakin*, 97 Mich. 290.

The learned counsel for the appellant contends that the decree was not, in effect, a construction of the will, but a reformation of it; that there is no ambiguity in its provisions; and that, therefore, it comes within the rule stated by Schouler:

"We may lay it down, then, at the outset, that where the language employed in the will is clear, and of well-defined force and meaning, extrinsic evidence of what was intended in fact cannot be adduced to qualify, explain, enlarge, or contradict this language, but the will must stand as it was written." Schouler, Wills, § 568.

See, also, 1 Redf. Wills, chap. 10, § 39; *Wilkins* v. *Allen*, 18 How. 385.

The rules of law to be applied to the construction of wills are not in dispute, and are correctly stated by these learned authors. The province of the court in each individual case is to determine whether it comes within or without these well-established rules. This leads us to a statement of the facts, about which there is no dispute: Mr. Oades owned no such property as the steam barge John Oades. There was no corporation known by that name. He owned no stock in, or title to, the steam barge John Oades. There was a corporation organized under the laws of this State, known as the Peninsular Transit Company, with 1,880 shares of stock, of the par value of $50 each. Mr. Oades owned 600 shares of this stock. The sole property owned by this corporation was this barge, which he and his son had formerly owned, and had transferred to the corporation. When the stock was issued, he asked to have his shares issued to him in $5,000 lots, and six certificates were issued in accordance with this request. Before the company was organized, and it was not determined what the par value of each share should be, Mr. Oades spoke of his interest as shares of $1,000 each. After the organization and the issuance of the certificates, he spoke of and treated them in the same manner. When he drew his will, he handed to the scrivener a memorandum of his assets, in which he referred to this stock as "30 shares stock steamer John Oades, $30,000." This represented the entire amount of his stock in the corporation. Other *memoranda* were produced, in which he spoke of it in the same manner. The evidence leaves no doubt but that he always spoke of and treated a share as being of the par value of $1,000.

It is apparent that extrinsic evidence must be resorted to in order to identify this property described in the will, and which constituted the great bulk of his assets. This, of necessity, opened the door to the admission of testimony which would enable the court to "put itself in the place of the testator, by looking

into the state of his property and the circumstances by which he was surrounded when he made the will." Counsel for the appellant contends that when it is shown that this property was transferred to a corporation, and that he had shares in that corporation, the expression, "shares of stock in the steam barge John Oades," means the same thing as the shares of stock in the corporation. The terms of the will do not say so, and, in our judgment, refute this conclusion. It is evident upon the face of the will that Mr. Oades intended to substantially dispose of his entire estate by specific bequests. This is manifest from clauses 14, 15, and 16. By clause 15 he provided that, if there should be any surplus after the specific legacies, $150 should be given to Mrs. Collins, $200 to a sister-in-law, and $200 to a niece; and, should there be any deficiency to meet the last bequest in full, then the same should be made *pro rata* to the amount remaining. The term used in the sixteenth clause, "*any* residue or remainder," implies naturally that he did not anticipate that there would be much, if any, residue. . This conclusion is still more manifest from his own memorandum of his assets and liabilities. Under the construction of the appellant, the most singular and unnatural results would follow, and certain provisions of the will appear absurd. Is it conceivable that he intended to give his unborn child only $200? Or that he intended to bequeath to his two sisters only one share of the stock of the Peninsular Transit Company, worth only $50, for life, and upon their death to be divided among four? He evidently intended to make some liberal provisions for the support of his wife and the child yet unborn. He was possessed of an estate worth about $40,000. By this provision, as construed by the appellant, he bequeathed to his wife only $600, in trust for the maintenance of herself and child. It is impossible to believe that he intended any such inadequate provision. It is also manifest that he intended to make among his children and other objects of his bounty an equitable division of all his property, and reasonable pro-

visions for the proper support and maintenance of his wife. The result of appellant's contention would be that he intended to cut his own children off with a mere pittance, and leave the bulk of his entire estate to his wife, who had a child by a former marriage. We think it established beyond controversy that the testator, in making this will, treated those 30 shares as constituting his entire interest in the boat, and his entire stock in the corporation, and that the expression, "one share of stock in the steam barge John Oades," was understood and intended by him to mean 20 shares of stock in the corporation. It does not appear "from the four corners of the instrument" what is meant by the language used, but the extrinsic evidence clearly shows what the testator meant by it, and courts should so construe the will. This is not in conflict with the many cases cited by appellant's counsel.

The decree is affirmed, with costs to the complainants.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. LONG, C. J., did not sit.