# KAISER *v.* BRANDENBURG.

WILLS ; EVIDENCE ; TESTAMENTARY INTENT.

1. Where a testator after making several general bequests of money in his will, directs his executors to sell his stock of goods and real estate and to divide the proceeds equally among his two sisters and brother, and then by a residuary clause disposes of the residue of his estate, the bequest to his sisters and brother is specific and they take before the general legatees.
2. There being no ambiguity in such a will, evidence of the condition of the testator's estate at the time he made the will, and of his declarations and notes made by the attorney who drafted it from instructions received at the time, are inadmissible to show the testator's intent.

No. 961. Submitted March 8, 1900. Decided April 8, 1900.

HEARING on an appeal from a decree of the Supreme Court of the District of Columbia in a suit by executors for the construction of a will. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Clarence A. Brandenburg* for the appellants:

:

1. The legacy and devise made in the sixth paragraph of the will were undoubtedly specific. 13 Am. & Eng. Encyc. L. 10; Roper on Legacies, 192, 242; 2 Redf. on Wills, 132; Woerner Am. Law Admn., Sec. 444; Roper, *193. The devise of the real estate of the testator was also specific; all devises of real estate or the proceeds of sale of real estate are considered as specific. 2 Redfield on Wills, *145. On the other hand, the money legacies contained in the preceding paragraphs of the will, to Margie M. Earnshaw and others, are general legacies. 13 Am. & Eng. Encyc. L. 11. Therefore, the devise and bequest made by the sixth paragraph of the will do not abate because of the insufficiency of the estate to pay the general legacies. Redf. on Wills, 450.

2. To justify recourse to extrinsic evidence, the will being clear and unambiguous on its face, an ambiguity must arise from the application of the provisions of the will, to the estate of the testator. 2 Am. & Eng. Encyc. L. 287; *Ellmaker* v. *Ellmaker*, 4 Watts, 90; *Patch* v. *White*, 117 U. S. 217; *Gilmer* v. *Stone*, 120 U. S. 586. Under the circumstances of this case, the testimony of Mr. Colbert as to declarations of the testator was incompetent. *Bradford* v. *Mathews*, 9 App. D. C. 443; Schouler on Wills, Secs. 568, 569, 577; *Edgerley* v. *Barker*, 28 L. R. A. 328; *In re Woodward*, 117 N. Y.522; *Attorney General* v. *Grote*, 3 Meriv. Rep. 317; *Ryers* v. *Wheeler*, 22 Wend. 52; *Fonnereau* v. *Poyntz*, 3 Brown Ch. 477; *Hawman* v. *Thomas*, 44 Md. 40; *McAleer* v. *Schneider*, 2 App. D. C. 467; *Weatherhead's Lessee* v. *Baskerville*, 11 How. 357; *Walston's Lessee* v. *White*, 5 Md. 304; *Shreve* v. *Shreve*, 43 Md. 382. Moreover, to supply words, as is sought to be done in this case, the intention to use the words sought to be supplied must appear upon the face of the will itself. *Hawman* v. *Thomas*, 44 Md. 41; *Wilkins* v. *Allen*, 18 How. 385.

*Mr. Frank T. Browning* and *Mr. Charles A. Keigwin* for the appellees:

1. The bequest of the testator's stock of merchandise and of his lands is not specific, because a sale is imperatively directed, and the legatees are entitled to be paid only out of the proceeds. A legacy or devise is specific only where the legatee or devisee can claim the thing named in specie. *Craig* v. *Leslie,* 3 Wheat. 563; *Cropley* v. *Cooper,* 19 Wall. 167; *Ford* v. *Fleming,* 2 P. Wms. 469; *Saville* v. *Blackett,* 1 P. Wms. 778; *Langstroth* v. *Golding,* 41 N. J. Eq. 53; *Gillaume* v. *Adderley,* 15 Vesey, 384; *LeGrice* v. *Finch,* 3 Merivale, 50; *Sparrow* v. *Josselyn,* 16 Beaven, 135; *Ellis* v. *Walker,* Ambler, 309; *Mullins* v. *Smith,* 1 Drew & Sm. 204.

2. The pecuniary legacies are to be paid from the fund created by the sixth paragraph, because that fund is the entire residuum of the estate. 3 Jarman on Wills, 427, note; *Lewis* v. *Darling,* 16 How. 1; *Shulters* v. *Johnson,* 38 Barb. 80.

3. The pecuniary legacies are charged on the fund provided for by paragraph six, because there is no other source from which they could come, and this the testator well knew. There is no doubt that he intended the pecuniary legacies to be paid from the proceeds of the sale. The only question is whether his undoubted intention is to be defeated by his failure to use precisely correct technical language. The testator's intention is "the cardinal rule in the construction of wills." *Finlay* v. *King,* 3 Pet. 377. In pursuit of this intention, a court may properly look to the testator's circumstances, his relations with the legatees and other persons, and the state of his affairs, and consider whether, having regard to all such facts, one construction or the other would best make his words express his purpose. *Leigh* v. *Savidge,* 1 McCarter, 124; *Andrews* v. *Weller,* 2 Green Ch. 604; *Van Wintole* v. *Van Houten,* 2 Green Ch. 172; *Dey* v. *Dey,* 4 C. E. Green, 137; *Puller* v. *Puller,* 3 Randolph, 83; *Smith* v. *Bell,* 6 Pet. 68. This method of examining the testator's situation and arriving at his intention by inference from the character of his property, comes within that rule of

evidence under which parol proof is admissible to rebut an equity. 1 Greenl. Ev., Sec. 296 ; *Boys* v. *Williams*, 2 Russ. & Mylne, 698 ; 1 Jarman on Wills, 422. Parol evidence is admitted to show the state of the testator's affairs, in view of which he made his will. 2 Lead. Cas. in Eq. 212 ; *Lypet* v. *Carter*, 1 Ves., Sr. 499 ; *Druce* v. *Dennison*, 6 Ves., Jr. 385 ; *Page* v. *Leapingwell*, 18 Ves. 463; *Lowe* v. *Huntingtower*, 4 Russ. 532; *Bromfield* v. *Bromfield*, 12 Penna. 136 ; *Dornman* v. *Rust*, 6 Rand. 587 ; *White* v. *Hicks*, 33 N. Y. 383 ; *Fonnereau* v. *Poyntz*, 1 Brown, 472; *Lindgren* v. *Lindgren*, 9 Beav. 358; *Sellwood* v. *Mildmay*, 3 Ves. 306. The only restriction is, that the parol proof must not go to contradict the express words of the will. Instances of the receipt of such proof of the testator's circumstances to vary the apparent meaning or technical interpretation of his words are: *Fane* v. *Fane*, 1 Vernon, 30; Cases in Note 2, I Vernon, 31 ; *Ulrich* v. *Litchfield*, 2 Atkins, 373 ; *Clowdsley* v. *Pelham*, 1 Vernon, 411 ; *Gainsborough* v. *Gainsborough*, 2 Vernon, 252; *Cuthbert* v. *Peacock*, 2 Vernon, 593; *Elliot* v. *Hancock*, 2 Vernon, 143 ; *Dyose* v. *Dyose*, 1 P. Wms. 305 ; *Rosewell* v. *Bennett*, 3 Atkins, 77; *Alcock* v. *Sparhawk*, 2 Vernon, 228. Land may be charged with legacies by implication as well as by express words. *Sugden* v. *Warbasse*, 3 Stockton, 467; *White* v. *Alden*, 3 Green Ch. 343; *Bengough* v. *Walker*, 15 Ves. 514 ; *Jeacock* v. *Falkner*, 1 Brown, 295; *Waters* v. *Howard*, 1 Md. Ch. 119 ; *Colton* v. *Colton*, 127 U. S. 300; *Blake v. Hawkins*, 98 U. S. 315 ; *Given* v. *Hilton*, 95 U. S. 591.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from a decree giving construction to the will of Frederick J. Kaiser. Testator died April 30, and his will, made April 5, 1898, was regularly admitted to probate.

The first five paragraphs of said will make bequests to the following persons, in the order named: (1) Minnie C. Kaiser, in satisfaction of a debt, $2,000; (2) Margie M.

Earnshaw, $1,000; (3) Mrs. Augusta Fleming, $200; (4) Western Presbyterian Church, $300; (5) Trustees Rock Creek Cemetery, $200. Paragraph 6 reads as follows:

"6. I direct my executors hereinafter named to sell and convert into cash the stock of goods and sell the entire contents of the store now conducted by me at premises No. 1114 F street, northwest, in the city of Washington, D. C., and I also direct them to sell and convey in fee simple, without liability on the part of any purchaser to see to the application of the purchase-money, all the real estate, wherever situated, of which I may die seized or possessed, or to which I may be in any manner entitled at the time of my death, and to divide the proceeds of the sale of my said store and contents, and of said real estate, equally among my sisters Minnie C. Kaiser, Carrie V. Kaiser and my brother George J. Kaiser, share and share alike."

Paragraph 7 bequeaths: "All the balance of my personal estate, as well as all the rest and residue of my estate, of whatever kind and wherever situated, to my sister Minnie C. Kaiser."

Testimony was introduced showing that the personal property of testator consisted of a horse and buggy worth from $75 to $100, and $632.59 in money, and an interest in the stock of merchandise described in said paragraph 6.

The stock has been sold and the net proceeds amount to $1,308.80.

There were some book accounts also, but there is no evidence of their amount, and they are conceded to have no value. He owned a one-fifth interest in several small pieces of real estate, inherited from his father.

The debts proved against the estate, including the $2,000 due Minnie C. Kaiser, amount to $3,000.

It appears, therefore, that after the payment of the debts there is not sufficient property left to satisfy the foregoing general legacies, without resort to the real estate named in item 6 of the will.

It was also shown, by the evidence of the attorney who prepared the will, that the testator gave him information and instructions of which he made brief notes. The only property mentioned specifically was the stock of merchandise and real estate aforesaid. He did not state the value of his estate; but counsel assumed that it was sufficient to pay all the legacies indicated. He was unmarried, but stated that he was engaged to Miss Earnshaw, one of the legatees. He had one brother, whom he expressed a wish to disinherit, and one other brother and two sisters as named in paragraph 6.

The memorandum, said to refer to the disposition made in paragraph 6, is in the following words: "All the rest and residue of real estate, and stock in store 1114 F street N. W., and personal estate, is to be sold and proceeds divided between Minnie C., Carrie V. and George J. Kaiser; and all my personal estate to go to Minnie C. Kaiser."

The conclusion of the court was as recited in its decree: "That paragraph 6 of said will does not operate to give Minnie C., Carrie V. and George J. Kaiser the entire proceeds of said real estate when sold, but merely the net proceeds after the payment of expenses of administration attending the sale thereof, and after the payment of the general legacies set forth in paragraphs 2, 3, 4 and 5 of said will."

This conclusion was founded partly on the fact that the testator must have known, when he made the will, that he had not sufficient property to satisfy the general legacies, first provided, without resort to that described in paragraph 6; and largely on the notes of instructions for the preparation of the will. These instructions, it was said by the learned justice presiding in the equity court, "demonstrated beyond doubt that he intended all these legacies to be paid from his property generally or certainly from his real estate, and that he only desired to divide the proceeds of what was left among his sisters and brother."

The practical effect of the decree is to convert paragraph 6 of the will into a mere residuary clause. We can not concur in this view. The paragraph, which is immediately followed by a general residuary clause, disposes of specific parts of the testator's estate plainly distinguished from all others. It answers all the requirements of a specific legacy. *Douglas* v. *Douglas,* 13 App. D. C. 21, 26; 13 A. & E. Encyc. L. 10.

That the specific property directed to be sold for division of its proceeds comprises both real and personal estate, does not alter the character of the bequest.

The command to sell worked an equitable conversion of both species of property into money; and that money—the proceeds of a sale regarded in equity as having already been made—is as specific and distinguishable as the sources of its derivation. Moreover, it was optional with the legatees named to prevent an actual sale and work a reconversion by electing to take the property as it stood, provided they labored under no disability at the time. *Craig* v. *Leslie,* 3 Wheat. 563, 578.

Great stress was laid, on the argument, upon the word " proceeds," used in the direction for division, as raising an ambiguity that requires the amount and character of the testator's property, and all the circumstances surrounding him at the time of the execution of the will, to be resorted to for the purpose of ascertaining his meaning.

Surrounding conditions and circumstances may be admissible in evidence as aids in arriving at the meaning of ambiguous words. They are clearly so in order to explain ambiguities arising out of extrinsic circumstances, as to persons provided for, objects of description, and the like; but never to show a different intention in the testator from that which the will discloses. *Weathershead's Lessee* v. *Baskerville,* 11 How. 329, 357; *Allen's Exrs.* v. *Allen,* 18 How. 385, 393; *Patch* v. *White,* 117 U. S. 210, 219; *Gilmer* v. *Stone,* 120 U. S. 586, 590.

We are unable to perceive any ambiguity in paragraph 6. The words are plain and their meaning obvious. The word "proceeds" seems to be aptly used when taken in its common, ordinary meaning; and that is the sense in which all words in a will are to be taken, unless there is some plain indication to the contrary either in the clause itself or the context. *McAleer* v. *Schneider*, 2 App. D. C. 461, 469; 1 Redf. Wills, 452.

The fact that the testator did not have sufficient property, at the time of his decease, to satisfy the general legacies without encroaching upon the fund provided in paragraph 6, furnishes occasion for the executors, out of abundant caution, to apply for instructions that will protect them from conflicting claims of liability.

That the same conditions existed at the time of the execution of the will, can not develop ambiguity in language that is direct and plain.

By reason of these conditions, some of the legatees must suffer disappointment, and that is all there is in it.

Upon the assumption, first, that the testator had in mind the exact condition and character of his estate when he made the will, and, second, that he must have anticipated speedy death without increase or change in its quantity or quality, it is contended that a presumption must arise that he did not intend the general legacies should suffer abatement.

Upon the presumption of a controlling intent, we are virtually asked to read into a clause that, upon its face, plainly negatives any such intention, the additional words, "after the discharge of the legacies aforesaid," or other words of equivalent signification.

This is not the explanation of an ambiguity, but the substitution of conjecture for expressed intention. It sets aside what the testator has done, and substitutes that which it may be supposed he ought, in good conscience, to have done.

For still greater reasons, the intention of the testator can not be explained, much less varied, by evidence of his declarations made at the time that the will was in the course of preparation. The notes taken by the attorney for use in writing the instrument were clearly inadmissible. *Weathershead's Lessee* v. *Baskerville,* 11 How. 329, 358; *Allen's Exrs.* v. *Allen,* 18 How. 385, 393; *McAleer* v. *Schneider,* 2 App. D. C. 461, 467.

For the reasons given the decree must be reversed, with costs to be paid out of the estate in the hands of the executors. The cause will be remanded for further proceedings in conformity with this opinion. *Reversed.*