ARTHUR W. CRANE & another, executors, *vs.* MARION C. HORTON & others.

Suffolk.    November 15, 1933. — June 26, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Devise and Legacy,* Inconsistent gifts. *Corporation,* Corporate entity.

At the hearing of a petition by the executor of a will for instructions, the following facts appeared: In 1911 a son of the testator was associated with him in an undertaking business owned by the testator and continued so until in 1916 the testator formed a corporation, conveying to it a part of his real estate and all the personal property used in the business, and receiving all but two of the shares of stock, one of which was issued to his wife and the other to his son, who continued in the business as an employee of the corporation. Thereafter and until his death in 1931, the testator conducted the business much as he would his own, without directors' meetings or much other strictly corporate activity, although certificates of condition were filed with the commissioner of corporations from 1926 to 1931 inclusive, which recited the holding of annual stockholders' meetings, and the business was conducted in the corporate name. There was an account in a certain bank in the name of and belonging to the corporation, and there was none there in the testator's name. The corporation had bills receivable of a substantial amount. The testator had none. The corporation owed debts to a substantial amount. In June, 1931, the testator made his will. In a paragraph numbered 2, he gave his son "all monies that are on deposit in" the bank where the corporation funds were deposited, "standing to my credit." In a paragraph numbered 1 he gave his son "all of my Undertaking Business, including all caskets, fixtures and rolling stock," with certain exceptions. In a paragraph numbered 3 he directed the sale of "my real estate, wherever located" and the division of the proceeds among his wife, his son and his daughter, and in a paragraph numbered 9 he directed the distribution of the residue of his estate equally among them. In August, 1931, the testator died. *Held,* that

(1) The corporate entity could not be ignored, and the intent of the testator as expressed in paragraphs 1 and 2 of the will was impossible of fulfilment;

(2) The son took nothing under those paragraphs;

(3) The estate should be equally divided among the widow, the son, and the daughter, under paragraph 9.

PETITION, filed in the Probate Court for the county of Suffolk on June 18, 1932, by the executors of the will of Horace R. Crane, late of Boston, for instructions.

The petition was heard by *Poland*, J.  It appeared that the will was dated June 18, 1931, and that the testator died on August 28, 1931.  Other material facts are stated in the opinion.

A final decree was entered that Walter C. Crane took nothing under paragraphs numbered I and II of the will. He appealed.

*J. W. Hurley*, stated the case.

*J. Priluk*, for the respondent Walter C. Crane.

*J. T. Batchelder*, for the respondent Lillian L. Crane and another.

RUGG, C.J.  This is a petition by the executors of the will of Horace R. Crane for instructions as to their duties under these clauses in that will: "I. To my son, Walter C. Crane, I give all of my Undertaking Business, including all caskets, fixtures and rolling stock, pertaining to and used by me in connection with said business; with the exception of my personal car, namely; one Hupmobile Sedan or any other car that I may have at my decease"; "II. To my son, Walter C. Crane, I give all monies that are on deposit in the First National Bank of Boston (Fields Corner Branch) standing to my credit"; "III. I direct that my executors hereinafter named in their discretion, sell my real estate, wherever located and the proceeds to be divided between my wife, Lillian L. Crane, my son, Walter C. Crane and my daughter, Marion G. Horton; until the sale of the said real estate, the rentals are to be equally divided between the said Walter C. Crane, Marion G. Horton and Lillian L. Crane, share and share alike after the taxes and interest are paid"; and "IX. I direct that all the rest and residue

of my estate, including life insurances, money in banks, (except my deposit in Fields Corner Branch of the First National Bank of Boston), bills receivable, etc., be held by my executors (hereinafter mentioned) and after all bequests and bills and expenses have been paid; the balance remaining shall be paid in equal sums to my wife, Lillian L. Crane, my son, Walter C. Crane and my daughter, Marion G. Horton."

The material facts are not in dispute and were found by the trial judge to be in substance these: Before 1916 the testator owned an undertaking business. In that year he caused a corporation to be formed known as H. R. Crane Company. He owned all but two of the issued shares of its capital stock which he received in return for a transfer to the corporation of part of his real estate, called the Dorchester Avenue property, and all the personal property used in the undertaking business. The other two shares of stock at his death were held by his son, Walter C. Crane, and his widow. Although some requirements of the corporation law were not complied with, the corporation functioned as such and at the testator's death title to all the property used in the undertaking business, except the real estate numbered 394 Washington Street, Dorchester, was in the corporation. The Washington Street property was the principal place of business of the corporation, there being only a nominal office, with rented garages, on the Dorchester Avenue real estate which the corporation owned. The bank deposit in the Fields Corner branch of The First National Bank of Boston was in the corporation name and belonged to it, and no deposit there stood in the testator's name. The corporation had bills receivable to a substantial amount; the testator had none. The corporation owed debts to a substantial amount. The real estate of the corporation on Dorchester Avenue is valued by the assessors for tax purposes at $16,000 and is subject to a mortgage of $2,500. The Washington Street property was appraised in the inventory at $20,000. The son, Walter C. Crane, went to work for his father, the testator, in the undertaking business about 1911 and continued to work for him until the

formation of the corporation in 1916. Thereafter he was in the employ of the corporation until the death of his father in 1931. The testator was president and treasurer of the corporation from its organization until his death and he conducted its business of undertaking much as he would conduct his own business, without directors' meetings or much other strictly corporate activity. But the business was conducted in the corporate name. Purchases and bills were made in the corporate name. The signs were in that name. The stationery and bill heads were in the corporate name or in the name of H. R. Crane & Co. The bank account was in the name of H. R. Crane & Co. Certificates of condition were filed with the commissioner of corporations from 1926 to 1931 inclusive. These certificates recited the holding of stockholders' meetings in each year from 1925 to 1930.

The ultimate intent of the testator seems clear. He desired his son to receive the undertaking business and the widow, daughter and son to share equally in all his real estate and his bills receivable. Obviously he included the real estate of the corporation and its bills receivable in the property which he wished to divide among the three. The corporation is not a party to these proceedings. No means have been suggested whereby it can be made a party. Its financial condition is not disclosed further than that it owns considerable property and owes debts to a substantial amount. Its creditors cannot be ignored. The widow owns one share of its stock.

It has not been and could not well be argued that this is a case where the corporate entity can be disregarded and the testator treated as the sole owner of all its property. *Chilson* v. *Mayor of Attleboro*, 247 Mass. 191, 202, and cases cited. It has not been suggested that the son can be required to accept the shares of stock upon condition that he will see that other provisions of the will as to real estate and bills receivable are carried out. That would be a condition which as holder of the shares of stock belonging to the estate he might not be able to perform.

It cannot rightly be held that it was the dominating pur-

pose of the testator to have all his stock in the corporation transferred to the son under the gift of the undertaking business when such construction would render impossible the devise of real estate owned by the corporation and the legacy of its bills receivable. To carry out the part of the testator's intent expressed in the gift of the undertaking business by declaring that the son is entitled to the stock of the corporation would violate the equally clearly expressed testamentary intent that all the real estate and bills receivable be divided. In *Johnson* v. *Goss*, 128 Mass. 433, 437, a bequest of "my interest in the property in the lands and machinery and effects in sash and blind factory in Chicago" was held to entitle the legatee to stock owned by the testator in a Chicago corporation engaged in the manufacture of sashes and blinds. *Oades* v. *Marsh*, 111 Mich. 168. That principle might be adopted in the case at bar were it not for other inconsistencies flowing from that construction. It is impossible to carry out the apparent intention of the testator. It is equally impossible to effectuate the inconsistent bequests directed by a literal reading of the clauses quoted from the will. The conclusion follows that the son takes nothing under clauses I and II of the will.

The result will be the equal division of the property among the residuary legatees under clause IX. Such an equal division of the property among the widow, the daughter and the son carries out the general purpose of the testator more nearly than any construction presented in argument in behalf of the son.

Costs taxed as between solicitor and client and paid out of the estate are to be in the discretion of the Probate Court.

*Decree affirmed.*